UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AHAJI AMOS and KIRK AMOS DELIVERY AND COURIER, LLC<br><br>                    Plaintiffs,<br><br>          v.<br><br>AMAZON LOGISTICS, INC.,<br>                    Defendant. | CASE NO. 1:22-cv-00055<br><br>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR COMPEL ARBITRATION PURSUANT TO FED. R. CIV. P. RULE 12(b)(3) |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND .................................................................. 2

      A.   The Parties and Agreement at Issue. ........................... 2

      B.   The Lawsuit. ...................................................... 3

III.  GOVERNING LAW AND LEGAL STANDARDS .................... 4

IV.   ARGUMENT ..................................................................... 7

      A.   The Program Agreement Contains a Valid Agreement to
           Arbitrate. ......................................................... 8

           1.   The Agreement Is Subject to Arbitration Under the
                FAA. .......................................................... 10

           2.   The Agreement Is Also Subject to Arbitration Under
                Washington Law. ........................................... 12

      B.   The Arbitration Agreement Encompasses Plaintiffs' Claims. .... 14

           1.   The Parties Delegated the Determination of
                Arbitrability to the Arbitrator. ............................. 14

           2.   Plaintiffs' Claims All Arise Out of the Agreement in
                Any Event. .................................................... 16

                a.   Plaintiffs' Contract Claims Arise Out of the
                     Agreement. ........................................... 19

                b.   Plaintiffs' Statutory Claims Arise Out of the
                     Agreement. ........................................... 20

                c.   Plaintiffs' Tort Claims Arise Out of the Agreement. 22

V.    CONCLUSION ................................................................... 23

i

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Parts Distribution Xpress, Inc.*,
   No. 2:20-cv-00697-JMG, 2021 WL 1088231 (E.D. Pa. Mar. 22, 2021) ........ 13

*Adler v. Fred Lind Manor*,
   153 Wash.2d 331, 103 P.3d 773 (2004) ...................................................... 21

*Allison v. Medicab Intern., Inc.*,
   92 Wash. 2d 199, 597 P.2d 380 (1979) ...................................................... 21

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013)............................... 5

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)............................... 5

*Badgett v. Sec. State Bank*,
   116 Wash. 2d 563, 807 P.2d 356 (1991) ...................................................... 19

*Bircumshaw v. State*,
   194 Wash. App. 176.......................................................................................... 20

*Bort v. Parker*,
   110 Wash. App. 561, 42 P.3d 980 (2002)........................................................ 9

*Brookdale Senior Living Inc. v. Weir*,
   3:20CV293-GCM, 2021 WL 3464966 (W.D.N.C. Aug. 6, 2021) .................. 14

*Building Materials and Const. Teamsters Local No. 216 v. Granite Rock Co.*,
   851 F.2d 1190 (9th Cir. 1988)...................................................................... 19

*Capriole v. Uber Techs., Inc.*,
   7 F.4th 854 (9th Cir. 2021) ........................................................................... 12

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
   252 F.3d 707 (4th Cir. 2001) ............................................................... 6, 8, 17

*Cunningham v. Lyft, Inc.*,
   17 F.4th 244 (1st Cir. 2021) ......................................................................... 12

*D.V.C. Trucking, Inc. v. RMX Global Logistics, Inc.*,
   No. Civ. A 05-CV-00705, 2005 WL 2044848 (D. Colo. Aug. 24, 2005)......... 11

*David Terry Investments, LLC-PRC v. Headwaters Development Group LLC*,
   13 Wash. App. 2d 159, 463 P.3d 117 (2020)............................... 17, 18, 19, 23

*EFund Capital Partners v. Pless*,
   150 Cal. App. 4th 1311, 59 Cal. Rptr. 3d 340 (2007)................................... 17

*Gibbs v. Haynes Investments, LLC*,
   967 F.3d 332 (4th Cir. 2020) ....................................................................... 14

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)................................... 5

*Grimes v. Gov't Emples. Ins. Co.*,
   2019 U.S. Dist. LEXIS 126618, *5 (M.D.N.C., July 30, 2019)...................... 4

*Hamrick v. Partsfleet, LLC,*
  1 F.4th 1337 (11th Cir. 2021) ....................................................................... 12

*Hearst Commc'ns, Inc. v. Seattle Times Co.,*
  154 Wash. 2d 493, 115 P.3d 262 (2005) ........................................................ 9

*Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc.,*
  148 Wash. App. 400, 200 P.3d 254 (2009).................................................. 6, 7

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
  139 S. Ct. 524 (2019) ............................................................................... 14, 16

*In re Estate of Anches,*
  No. 78732-2-I, 2019 WL 3417100 (Wash. App. Div. I, July 29, 2019) ........ 15

*In re Jean F. Gardner Amended Blind Trust,*
  117 Wash. App. 235, 70 P.3d 168 (2003).................................................... 18

*JC Aviation Invest., LLC v. Hytech Power, LLC,*
  No. 81539-3-I, 2021 WL 778043 n.11 (Wash. App. Div. I, March 1, 2021) . 17

*Johnston Cnty. v. R.N. Rouse & Co., Inc.,*
  331 N.C. 88, 414 S.E.2d 30 (1992) ................................................................ 7

*Mendez v. Palm Harbor Homes, Inc.,*
  111 Wash. App. 446, 45 P.3d 594 (2002)................................................ 18, 21

*Michel v. Parts Auth., Inc.,*
  No. 15-CV-5730 (ARR)(MDG), 2016 WL 5372797
  (E.D.N.Y. Sept. 26, 2016) ............................................................................ 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)...................................... 5

*Muriithi v. Shuttle Exp., Inc.,*
  712 F.3d 173 (4th Cir. 2013) ..................................................................... 7, 8

*New Prime, Inc. v. Oliveira,*
  139 S. Ct. 532, 202 L. Ed. 2d 536 (2019)................................................ 10, 15

*Oracle Am., Inc. v. Myriad Grp. A.G.,*
  724 F.3d 1069 (9th Cir. 2013) ..................................................................... 16

*Palcko v. Airborne Express, Inc.,*
  372 F.3d 588 (3d Cir. 2004) ........................................................................ 13

*Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union,*
  665 F.3d 96 (4th Cir. 2012)......................................................................... 14

*Peters v. Amazon Servs., LLC,*
  2 F. Supp. 3d 1165 (W.D. Wash. 2013) ..................................................... 6, 9

*Pinkis v. Network Cinema Corp.,*
  9 Wash. App. 337, 512 P.2d 751 (1973)............................................. 5, 21, 22

*Precision Husky Corp. v. Mountain Equipment, Inc.,*
  No. 53054-2-I, 2004 WL 2699920 (Wash. App. Div. I, Nov. 29, 2004) ........ 18

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
  388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)............................... 22

iii

*R&C Oilfield Services, LLC, v. American Wind Transport Group, LLC*,
    447 F. Supp. 3d 339 (W.D. Pa. 2020) ............................................................ 11

*Rittman v. Amazon.com, Inc.*,
    971 F.3d 904 (9th Cir. 2020) ............................................................ 13

*Romero v. Watkins and Shepherd Trucking, Inc.*,
    No. 20-55768, 2021 WL 3675074 (9th Cir. Aug. 20, 2021) ............................ 13

*Rota-McLarty v. Santander Consumer USA, Inc.*,
    700 F.3d 690 (4th Cir. 2012) ............................................................ 5

*Sunbelt Residential Acquisitions, LLC v. Crowne Lake Associates, Ltd. P'ship*,
    1:20CV401, 2021 WL 512228 (M.D.N.C. Feb. 11, 2021) ...................... 15, 16

*Sw. Airlines Co. v. Saxon*,
    993 F.3d 492 (7th Cir. 2021) ............................................................ 12

*Thornton v. Hilton Worldwide Holdings, Inc.*,
    No. C21-1483-JCC, 2022 WL 355234 (W.D. Wash. Feb. 7, 2022) .............. 21

*Volt Info. Scis. v. Bd. of Trs.*,
    489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) ........................ 5, 6

*W.A. Botting Plumbing and Heating Co. v. Constructors-Pamco*,
    47 Wash. App. 681, 736 P.2d 1100 (1987) ........................................ 6, 9

*Wallace v. Grubhub Holdings, Inc.*,
    970 F.3d 798 (7th Cir. 2020) ............................................................ 12

*Woolley v. El Toro.com, LLC*,
    No. 81218-1-I, 2021 WL 1788526 (Wash. App. Div. I, May 3, 2021) .......... 15

## STATUTES

815 ILCS 705/3 .................................................................................. 20
9 U.S.C. § 1 ........................................................................... 10, 11, 12
9 U.S.C. § 2 .................................................................................... 5
RCW 19.100.010(6) ............................................................................ 20
RCW 19.100.010(9) ............................................................................. 4
RCW 19.100.020 ............................................................................... 21
RCW 19.110 .................................................................................... 20
RCW 19.86 ..................................................................................... 20

Defendant Amazon Logistics, Inc. ("Amazon") moves for an order dismissing this action and compelling Plaintiffs—Kirk Amos Delivery and Courier LLC and its owner, Ahaji Amos—to arbitrate their claims against Amazon as required by the contract they put at issue in this lawsuit. The Motion is supported by the declaration of Micah McCabe and the court file.

## I. INTRODUCTION

Kirk Amos Delivery and Courier LLC ("Kirk") is a former Delivery Service Partner ("DSP") of Amazon. Ahaji Amos is the sole owner of Kirk. Kirk's rights and obligations as a DSP were defined by the contract that governed its participation in Amazon's DSP Program (the "Agreement").[1] Ms. Amos executed the Agreement on Kirk's behalf.

Plaintiffs promised to arbitrate all disputes arising out of the Agreement. The Agreement unambiguously requires that "ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT." (Emphasis in original.) Plaintiffs defied this contractual commitment by bringing claims arising out of the Agreement in this public lawsuit.

---

[1] The Agreement is submitted as Exhibit 1 to the accompanying declaration of Micah McCabe.

## II. BACKGROUND

### A.    The Parties and Agreement at Issue.

Amazon Logistics is responsible for the transport and delivery of goods to Amazon.com customers. Comp., ¶ 11. Through the Delivery Service Program, Amazon contracts with independently owned delivery businesses, known as DSPs, to service routes in a geographic area. Declaration of Micah McCabe ("McCabe Decl."), ¶ 3.

Kirk is a single-member limited liability company owned and managed by Ms. Amos. Compl., ¶ 25. Ms. Amos personally executed the DSP Agreement, which governed Kirk's participation in the DSP Program. *Id.*, ¶ 27. Kirk was a DSP in Durham, North Carolina, from May 2019 until April 2021, when Amazon exercised its right to terminate the Agreement based on Kirk's multiple breaches of the Agreement. McCabe Decl., ¶¶ 5-6.

The Agreement includes a broad arbitration clause that requires the parties to arbitrate all disputes arising out of the Agreement before the AAA and under AAA rules: "ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT …. The arbitration will be conducted by the American Arbitration Association (the "AAA") under its rules, including the AAA's Commercial Arbitration Rules." Agreement, § 13 (emphasis in original).

**B.     The Lawsuit.**

With a 52-page Complaint, Plaintiffs lodge a litany of criticisms about the DSP Program—principally, what they characterize as onerous requirements and policies set by the Agreement—and bring nine separate legal claims predicated on these grievances and Amazon's termination of the Agreement. Specifically, Plaintiffs bring a claim of breach of express and implied terms of the Agreement (claim 2); and package the same allegations and theories of breach as claims of unjust enrichment (claim 3) and violations of Washington's Consumer Protection Act (claim 4), Washington's Franchise Investment Protection Act (claim 6) and the Illinois Franchise Disclosure Act of 1987 (claim 7). Plaintiffs also bring tort claims challenging Amazon's representations about the Agreement as fraudulent (claim 5) and performance under the Agreement as tortious (claims 8 and 9). Finally, Plaintiffs bring a claim under the FLSA to recover, among other things, wages allegedly owed to Kirk for services rendered under the Agreement by Kirk's drivers (including but not limited to Amos), which they claim Amazon wrongly did not pay (claim 1).[2]

Although the Complaint is styled with both Kirk and Ms. Amos as Plaintiffs, it does not specify which claims are brought on behalf of which

---

[2] Amazon denies the allegations and will vigorously defend the claims on the merits in the proper forum.

party/(ies). In many instances Plaintiffs suggest that Amos and her business are one and the same. *See, e.g.,* Compl., ¶ 226 ("Amazon is liable for damages to Amos, through Kirk Amos LLC. . .").[3] As discussed *infra*, all of Plaintiffs' claims are subject to arbitration, whether they are brought on behalf of Kirk, Ms. Amos, or both.

### III. GOVERNING LAW AND LEGAL STANDARDS

"Arbitration clauses are a subset of forum-selection clauses, which are enforced in this circuit pursuant to a Rule 12(b)(3) motion to dismiss for improper venue. The court may examine evidence outside the pleadings when considering the motion." *Grimes v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 126618, *5 (M.D.N.C., July 30, 2019) (citations omitted).

The Agreement is governed by federal and Washington state law. Agreement, § 13 ("This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal law, and Washington state law, without reference to any applicable conflict of laws rules."). Settled federal and Washington law both require the enforcement of arbitration agreements.

---

[3] *See also* Compl., ¶ 218 ("Amos, through Kirk Amos LLC, fulfilled its obligations under the Program Agreement and did not breach its terms"); ¶ 229 ("Amos, through Kirk Amos LLC, conferred benefits on Amazon"); ¶ 242 ("Amos, through Kirk Amos LLC, reasonably relied upon Amazon's false representations and material omissions"); ¶ 249 ("Amos, through Kirk Amos LLC, was a franchise under RCW 19.100.010(9)").

4

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies to arbitration agreements included in a transaction that involves interstate commerce. *See, e.g., Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012); *Pinkis v. Network Cinema Corp.*, 9 Wash. App. 337, 339-40, 512 P.2d 751 (1973). Congress passed the FAA to "reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991). And "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (quoting *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)). As the Supreme Court has repeatedly emphasized, "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 228, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (internal quotations omitted).

The FAA creates a body of federal substantive law that imposes a presumption of arbitrability. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in

favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). The FAA does not, however, completely displace state law: courts "apply[] general state-law principles of contract interpretation to the interpretation of an arbitration agreement." *Volt Info. Scis., Inc.*, 489 U.S. at 475. Thus, in determining whether parties have agreed to arbitrate a dispute, the court construes the agreement according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001) (citation omitted).

Washington law likewise favors arbitration. "Washington courts apply a strong presumption in favor of arbitration." *Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc.*, 148 Wash. App. 400, 405, 200 P.3d 254 (2009). "In interpreting an arbitration clause, the intentions of the parties as expressed in the agreement controls, but 'those intentions are generously construed as to issues of arbitrability.'" *Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165, 1170 (W.D. Wash. 2013) (quoting *W.A. Botting Plumbing and Heating Co. v. Constructors-Pamco*, 47 Wash. App. 681, 684, 736 P.2d 1100 (1987)). "Any doubts should be resolved in favor of coverage, and further, all questions upon which the parties disagree are presumed to be within the

arbitration provision unless negated expressly or by clear implication." [4]

*Heights*, 148 Wash. App. at 405.

## IV. ARGUMENT

A court has a limited gatekeeper function in determining whether a dispute is arbitrable. In this role, the court considers only whether (1) a valid agreement to arbitrate exists, and (2) if so, whether the dispute falls within the scope of the parties' arbitration agreement. *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). This inquiry may collapse into a single question—Does a valid agreement to arbitrate exist?—if the parties have delegated the issue of arbitrability to the arbitrator. As argued below, the second inquiry must be referred to the arbitrator if the parties "clearly and unmistakably" delegated the issue of arbitrability to the arbitrator, as by incorporation of arbitration rules that reserve that issue to the Arbitrator. *See infra*, Sec. IV.B.

Thus, the task before the Court in the first instance is to determine whether the parties' unambiguous agreement to arbitrate "ANY DISPUTE ARISING OUT OF [THE] AGREEMENT," as set out in the Agreement, is

---

[4] North Carolina law is in accord. *Johnston Cnty. v. R.N. Rouse & Co., Inc.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). ("North Carolina has a strong public policy favoring the settlement of disputes by arbitration. [Said] strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.")

valid. If so, then the Court must determine whether the parties delegated the issue of arbitrability, *i.e.*, whether all or only some of Plaintiffs' claims are subject to arbitration, to the Arbitrator. If so, the Court should compel arbitration and stay or dismiss this action. If not, then the Court must determine whether the Agreement encompasses Plaintiffs' claims here.

Settled law compels the conclusions that (a) a valid agreement to arbitrate exists, and (b) the parties delegated the issue of arbitrability to the arbitrator by their incorporation of the American Arbitration Association's rules. Even if the Court were to reach a different conclusion regarding delegation, all of Plaintiffs' claim are within the scope of the arbitration agreement in any event.

## A. The Program Agreement Contains a Valid Agreement to Arbitrate.

The threshold inquiry on a motion to compel arbitration is whether a valid agreement to arbitrate exists. *Muriithi*, 712 F.3d at 179. In conducting this inquiry, the court applies ordinary principles of contract interpretation under the applicable law. *Choice Hotels Int'l, Inc.*, 252 F.3d at 710. Accordingly, Washington law guides the analysis here.

Plaintiffs do not dispute that the Agreement is a valid and enforceable contract. Indeed, they specifically allege that "the Program Agreement was a valid and binding agreement" executed by Amos, on Kirk's behalf, when Kirk

8

enrolled in the DSP Program. Compl., ¶ 27 & 216. They also seek damages for Amazon's alleged breach of this valid and binding agreement. *Id.*, ¶ 226.

Plaintiffs cannot dispute that the parties expressed a clear intent to arbitrate any disputes arising out of the Agreement. Washington courts apply the manifest theory of contract interpretation, by which the court "attempt[s] to determine the parties' intent by focusing on the objective manifestations of the agreement" by "imput[ing] an intention corresponding to the reasonable meaning of the words used." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash. 2d 493, 503, 115 P.3d 262 (2005). "The intent of the parties to a contract 'may be discovered not only from the actual language of the agreement, but also from viewing the contract as a whole, the subject matter and objective of the contract, all circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" *Peters*, 2 F. Supp. 3d at 1170 (quoting *Bort v. Parker*, 110 Wash. App. 561, 573, 42 P.3d 980 (2002)). "In interpreting an arbitration clause, the intentions of the parties as expressed in the agreement controls, and 'those intentions are generously construed as to issues of arbitrability.'" *Id.* (quoting *W.A. Botting Plumbing and Heating Co. v. Constructors-Pamco*, 47 Wash. App. 681, 684, 736 P.2d 1100 (1987)).

9

The Agreement emphatically states that "ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT." Agreement, § 13 (emphasis in original). This unambiguous language cannot reasonably be construed as anything other than a valid agreement to arbitrate, as numerous courts applying Washington law have recognized.

## 1.    The Agreement Is Subject to Arbitration Under the FAA.

Plaintiffs cannot avoid arbitration under the FAA's transportation worker exemption, as they allege. Compl., ¶ 3. Section 1 of the FAA provides a narrow exemption to its coverage for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This narrow exemption does not apply to the Agreement for at least two reasons.

*First,* the transportation exemption does not apply because its plain language limits its application to "contracts of employment." The Agreement here is a commercial contract between two business entities. In *New Prime, Inc. v. Oliveira,* the Supreme Court held that, as used in Section 1, "contracts of employment" means "any contract for the performance of work *by workers.*" 139 S. Ct. 532, 538, 202 L. Ed. 2d 536 (2019). In *New Prime,* a driver for an interstate trucking company argued on behalf of a class of drivers that because the drivers were independent contractors, they were not under "contracts of

10

employment." The Supreme Court held that the exemption could encompass independent contractor agreements relating to "workers." The Court did not address, however, whether "contracts of employment" could encompass an agreement between business entities, as Plaintiffs allege here.

The only court to consider the specific issue since *New Prime* held that the FAA's narrow exemption for transportation workers does **not** apply to contracts between business entities. In *R&C Oilfield Services, LLC, v. American Wind Transport Group, LLC*, 447 F. Supp. 3d 339, 347 (W.D. Pa. 2020), the Western District of Pennsylvania engaged in a thorough analysis of the FAA and *New Prime* and concluded that neither warranted extending the exemption to "artificial business entities." 447 F. Supp. at 347 ("The Agreement here is a commercial contract between two business entities."). *R&C Oilfield* also is consistent with pre-*New Prime* authority. *See D.V.C. Trucking, Inc. v. RMX Global Logistics, Inc.*, No. Civ. A 05-CV-00705, 2005 WL 2044848, at *3 (D. Colo. Aug. 24, 2005) (holding that corporation was not a "transportation worker," and contract between two companies was an "arm's length business contract for carrier services" not an employment contract).

*Second*, Plaintiffs were not "engaged in foreign or interstate commerce" as defined in the residual clause of Section 1. Kirk delivered packages to customers locally from a delivery station in Durham, North Carolina. Compl. ¶ 29. Plaintiffs do not allege even incidental crossing of state lines, which itself

11

would not be adequate to invoke the exemption. The clause requires determining whether the work of a nationwide class of workers is intended to be local in nature versus interstate. *See, e.g., Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020), *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1346 (11th Cir. 2021); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021); *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 252 (1st Cir. 2021). Further, whether workers who do not physically transport goods across state lines are nevertheless "transportation workers" exempt from the FAA is currently pending review by the Supreme Court in *Sw. Airlines Co. v. Saxon*, 993 F.3d 492 (7th Cir. 2021), *cert. granted*, No. 21-309, 2021 WL 5858631 (2021). To the extent this Court accepts Plaintiffs' invitation to evaluate the transportation worker exemption (which it need not, given that the claims are also subject to arbitration under Washington law), it should do so only after the Supreme Court has addressed the issue.

## 2. The Agreement Is Also Subject to Arbitration Under Washington Law.

Because the Agreement is also subject to arbitration under Washington law (Agreement, § 1), the Court need not even consider the applicability of the transportation worker exemption.

Where, as here, an arbitration clause is governed by both federal and state law, state law mandated in a choice of law provision provides an

12

independent basis for compelling arbitration, even if the FAA exemption otherwise applies. *See e.g., Romero v. Watkins and Shepherd Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *2-3 (9th Cir. Aug. 20, 2021) (compelling arbitration of transportation worker's claims pursuant to Nevada law, where contract subject to exemption from FAA provided for the application of Nevada law); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (holding that the FAA-exempted agreement to arbitrate was still subject to arbitration pursuant to Washington state law); *cf. Rittman v. Amazon.com, Inc.*, 971 F.3d 904, 919-20 (9th Cir. 2020) (holding that arbitration clause was not subject to state law and therefore declining to compel arbitration). Indeed, courts may compel arbitration under state law without deciding whether the FAA exemption applies. *See Adams v. Parts Distribution Xpress, Inc.*, No. 2:20-cv-00697-JMG, 2021 WL 1088231, at *4 (E.D. Pa. Mar. 22, 2021) (compelling arbitration under state law while "assuming, without deciding" that FAA exemption applied); *Michel v. Parts Auth., Inc.*, No. 15-CV-5730 (ARR)(MDG), 2016 WL 5372797, at *3 (E.D.N.Y. Sept. 26, 2016) ("Even assuming the FAA does not apply, New York state law governing arbitration does apply").

**B.    The Arbitration Agreement Encompasses Plaintiffs' Claims.**

**1.    The Parties Delegated the Determination of Arbitrability to the Arbitrator.**

Whether Plaintiffs' claims are "dispute[s] arising out of [the] agreement," *i.e.,* the issue of arbitrability, is a question for the arbitrator. When parties "clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate," then issues of arbitrability must be determined by the Arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 530 (2019); *accord Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union,* 665 F.3d 96, 102 (4th Cir. 2012) (recognizing that "[p]arties, to be sure, can agree to arbitrate arbitrability" if the agreement "'clearly and unmistakably' provide[s] that the arbitrator shall determine what disputes the parties agreed to arbitrate."); *Gibbs v. Haynes Investments, LLC,* 967 F.3d 332, 337 (4th Cir. 2020) ("Of course, parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. When an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator a court must enforce that delegation clause and send that question to arbitration.") (citations omitted); *Brookdale Senior Living Inc. v. Weir,* 3:20CV293-GCM, 2021 WL 3464966, at *2 (W.D.N.C. Aug. 6, 2021) ("When

14

faced with a valid delegation clause, the court is required to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues").[5]

Parties may evidence such "clear and unmistakable" intent to delegate the issue of arbitrability to the Arbitrator by expressly incorporating arbitration rules that vest such authority in the arbitrator, such as the Commercial Rules of the American Arbitration Association, which are incorporated in the agreement here. AAA Commercial Arbitration Rules, R-7(a) (granting arbitrator authority to rule on "the arbitrability of any claim or counterclaim"); *Sunbelt Residential Acquisitions, LLC v. Crowne Lake Associates, Ltd. P'ship*, 1:20CV401, 2021 WL 512228, at *5-7 (M.D.N.C. Feb. 11, 2021) ("[I]n light of the Agreement's incorporation of the AAA Rules, questions of arbitrability properly fall to the arbitrator"); *Woolley v. El Toro.com, LLC*, No. 81218-1-I, 2021 WL 1788526 at *3-*4 (Wash. App. Div. I, May 3, 2021) (incorporation of AAA rules removed threshold question of arbitrability from trial court); *In re Estate of Anches*, No. 78732-2-I, 2019 WL 3417100 at *2-*3 (Wash. App. Div. I, July 29, 2019) ("By incorporating the AAA rules into the arbitration provision, the parties again expressed their intent to have the arbitrator, and not a court, decide arbitrability."). In fact, as the Ninth

---

[5] This issue of the applicability of the transportation worker employment contract exemption is not subject to delegation. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538, 202 L. Ed. 2d 536 (2019).

Circuit has observed: "Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).

Here, the Agreement expressly incorporates the AAA rules, providing: "The arbitration will be conducted by the [AAA] under its rules, including the AAA's Commercial Arbitration Rules." Agreement, § 13. The Agreement then directs the parties to those rules: "The AAA's rules are available at www.adr.org or by calling 1-800-778-7879." That is, the Agreement incorporates and specifically directs the parties to the AAA rules that give the arbitrator authority over issues of arbitrability. By agreeing to the AAA rules, the parties delegated the issues of arbitrability to the arbitrator. *Sunbelt Residential* 2021 WL 512228, at *5-7. As such, this Court "possesses no power to decide the arbitrability issue" and must compel arbitration on the arbitrability of Plaintiff's claims. *Henry Schein Inc.*, 139 S. Ct. at 529.[6]

---

[6] It bears noting that Ms. Amos is not an unsophisticated party. According to her personal law firm website, www.ahajiamos.com, Ms. Amos is an attorney who has practiced law since 2000 at "some of the most prestigious law firms in the country," and is licensed in three states.

### 2. Plaintiffs' Claims All Arise Out of the Agreement in Any Event.

Because the parties delegated issues of arbitrability to the arbitrator, the Court should not consider the scope of the arbitration clause or resolve whether any of the claims are beyond its scope (they are not). Should the Court consider the issue, it would not change the outcome: Plaintiffs' claims all arise out of the Agreement and must be arbitrated.[7]

Consistent with the majority view among state and federal courts, Washington law affords broad construction to clauses requiring arbitration of all disputes "arising out of" a contract. Such terms are construed to encompass all claims relating to the agreement, including noncontract claims. *See David Terry Investments, LLC-PRC v. Headwaters Development Group LLC*, 13 Wash. App. 2d 159, 168-69, 463 P.3d 117 (2020) (compelling arbitration of breach of contract, unjust enrichment, fraud, and conversion claims pursuant to analogously worded arbitration clause); *see also JC Aviation Invest., LLC v. Hytech Power, LLC*, No. 81539-3-I, 2021 WL 778043, *3 n.11 (Wash. App. Div. I, March 1, 2021) ("Clauses requiring arbitration of disputes 'arising out of' are interpreted broadly.").[8] Under Washington law, a valid agreement to

---

[7] To the extent the Court finds any claims to be non-arbitrable, it can stay them while the underlying facts are litigated in arbitration. *Choice Hotels Int'l, Inc.*, 252 F.3d at 712.

[8] Under the minority view, arbitration clauses requiring the arbitration of claims "arising under" an agreement are given narrower scope than clauses

arbitrate extends to statutory claims and claims sounding in tort. *See In re Jean F. Gardner Amended Blind Trust*, 117 Wash. App. 235, 239-40, 70 P.3d 168 (2003) (compelling arbitration of tort claims that "arise from the agreement"); *Mendez v. Palm Harbor Homes, Inc.*, 111 Wash. App. 446, 454, 45 P.3d 594 (2002) ("In Washington, it is well settled that [Consumer Protection Act] and other statutory claims are subject to arbitration under the FAA."); *Precision Husky Corp. v. Mountain Equipment, Inc.*, No. 53054-2-I, 2004 WL 2699920, at *3 (Wash. App. Div. I, Nov. 29, 2004) ("Parties cannot escape contract arbitration simply by casting their claims in terms of tort.").

Washington law also recognizes that an agreement to arbitrate is not limited to signatories. Indeed, where a party seeks to enforce benefits and rights under a contract, it is equitably estopped from avoiding the burden of arbitration imposed by it. *David Terry Investments*, 13 Wash. App. 2d at 170. *David Terry Investments* is instructive. There, as here, a business entity and its owner brought suit against a counterparty to an agreement with an

---

requiring arbitration of claims "relating to" an agreement. *See Terry*, 13 Wash. App. 2d at 168 (analyzing authority). In *Terry*, the court specifically rejected this approach as inconsistent with the strong policy favoring arbitration. The majority of federal courts are in accord. *See EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1326-30, 59 Cal. Rptr. 3d 340 (2007) (collecting cases). Each of Plaintiffs' claims in this case involves the formation, interpretation, and parties' performance under the Agreement, and thus is subject to arbitration even if the arbitration clause is given the disfavored narrow construction.

18

arbitration clause. *Id.* at 162. Although only the business entity was a signatory to the contract, the court found that the individual plaintiff was equitably estopped from avoiding arbitration as the claims brought in his individual capacity were "as intimately tied to the . . . agreements" as the claims brought by the corporate defendant. *Id.* ("We hold it would be inequitable for Terry to accept the benefit of the contract, *i.e.*, the promises made in the joint venture agreements, while avoiding its burden, i.e., an agreement to arbitrate. To the extent DTI must pursue its claims in arbitration, so to must Terry.").

### a.   Plaintiffs' Contract Claims Arise Out of the Agreement.

Plaintiffs bring claims of breach of contract, alleging breach of the express terms of the Agreement and the implied covenant of good faith and fair dealing. Compl., ¶¶ 219-225. Both species of breach are subject to arbitration. Under settled Washington law, the implied covenant of good faith and fair dealing arises from a contract's express terms and obligates contracting parties "to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569, 807 P.2d 356 (1991). A claim of breach of the implied covenant necessarily requires interpretation of an agreement's express terms and "arises under" the contract. *See Building Materials and Const. Teamsters Local No. 216 v. Granite Rock*

Case 1:22-cv-00055-CCE-JEP   Document 14   Filed 03/25/22   Page 24 of 30

*Co.*, 851 F.2d 1190, 1193-94 (9th Cir. 1988) (claim of breach of implied covenant "clearly involves the proper interpretation of the agreement" and is subject to arbitration).[9]

### b. Plaintiffs' Statutory Claims Arise Out of the Agreement.

Plaintiffs bring statutory claims alleging violation of Washington's Franchise Investment Protection Act, RCW 19.110 *et seq.* ("FIPA"), the Illinois Franchise Disclosure Act of 1987, Washington's Consumer Protection Act, RCW 19.86 *et seq.* ("CPA"), and the federal Fair Labor Standard Act. The crux of Plaintiffs' FIPA claim (and its Illinois analog) is that the Agreement created a franchise relationship. *See* Compl., ¶ 106 ("Defendant sold Plaintiffs a franchise under RCW 19.100.010(6) when the parties entered into the Agreement.") & ¶ 272 ("Amazon sold Amos a franchise under 815 ILCS 705/3 when the parties entered the Program Agreement as pled herein."). Plaintiffs' CPA claim merely recasts its breach of contract claim as a violation of the CPA. *See* Compl., ¶ 235 (alleging that Amazon's "breach of contract were [*sic*]

---

[9] Plaintiffs also bring a claim of unjust enrichment premised on the same facts and theory of harm as the breach of contract claim – Amazon's alleged unilateral control of the program. Under Washington law, unjust enrichment is not a viable claim where, as here, the parties' relationship is governed by contract. *Bircumshaw v. State*, 194 Wash. App. 176. 205, 380 P.3d 524, 539 (2016) ("Unjust enrichment is a basis for recovering the value of a benefit conferred on another party in the absence of a contractual relationship."). In any event, the claim is duplicative of Plaintiffs' contract claim.

egregious and aggravated"). Finally, Plaintiffs' FLSA claim seeks reimbursement from Amazon for wages paid to Kirk drivers for services performed under the Agreement. *See* Compl., ¶ 206 ("Amos is entitled to be paid unpaid wages and overtime compensation for all hours worked over forty (40) in a workweek...., both for the hours she worked personally and for the hours of her drivers, which she had to pay through Kirk Amos LLC").

Claims under FIPA and CPA are subject to mandatory arbitration provisions. *See Allison v. Medicab Intern., Inc.*, 92 Wash. 2d 199, 203-04, 597 P.2d 380 (1979) (failure of defendants to register as a franchise under RCW 19.100.020 did not vitiate arbitration clause or render the agreement void; "It is simply a controversy 'arising out of or in connection with (the) Agreement' and as such becomes subject to the arbitration agreement enforceable under the federal arbitration act."); *Pinkis*, 9 Wash. App. at 346-47 (affirming order compelling arbitration of Franchise Act claim); *Mendez*, 111 Wash. App. at 454 ("In Washington, it is well settled that CPA and other statutory claims are subject to arbitration under the FAA.").

Plaintiffs' FLSA claim likewise is subject to arbitration. This claim arises out of the Agreement because, among other things, it seeks relief from Amazon for wages paid to Kirk drivers, including but not limited to Amos, for services performed under the Agreement. *See* Compl., ¶ 206. Federal employment claims are arbitrable under the FAA, *Adler v. Fred Lind Manor*, 153 Wash.2d

331, 343, 103 P.3d 773 (2004) (recognizing the arbitrability of federal and state statutory employment claims). This includes claims under the FLSA. *Thornton v. Hilton Worldwide Holdings, Inc.*, No. C21-1483-JCC, 2022 WL 355234 (W.D. Wash. Feb. 7, 2022) (compelling arbitration of FLSA claim).

### c. Plaintiffs' Tort Claims Arise Out of the Agreement.

As discussed *supra,* under settled law, pleading a claim in tort does not allow a party to evade a contractual requirement to arbitrate. Plaintiffs' tort claims of fraud and negligent and intentional infliction of emotional distress are directed to the parties' rights and obligations under the Agreement and must be arbitrated.

Plaintiffs' fraud claim is directed to alleged misrepresentations and omissions by Amazon about the DSP Program, including the program requirements and Amos' potential profits. *See* Compl., ¶ 239 (accusing Defendant of false representations). This claim is squarely directed to alleged representations made prior to the execution of the contract. *Id.* ("Amos would not have entered into the Agreement with Amazon had she known [of the alleged misrepresentations and omissions].").

Under settled law, a claim that a party was fraudulently induced into entering a contract is still subject to that contract's mandatory arbitration provision. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) (claim that execution of contract

22

was procured by fraud was subject to contract's arbitration provision); *see also Pinkis*, 9 Wash. App. at 345 ("If the federal arbitration act is to be given the required effect, . . . the aggrieved party submits his grievances (including a claim of fraud inducing entry into the entire contract) to the forum of arbitration rather than to the state or federal courts."). This authority is controlling here.

Further, the Agreement has a merger clause stating that it "is the complete agreement of the parties relating to the Services and supersedes all prior agreements and discussions relating to same." Agreement, § 15. To prevail on their fraud claim, Plaintiffs will have to prove a misrepresentation of fact that is not defeated by the express terms of the Agreement, including the merger clause.

Plaintiffs' emotional distress claims merely recast the allegations of breach under a theory of tort. Plaintiffs allege that Amazon cited her for nonexistent breaches and otherwise wrongfully interfered with the operation of her business. Compl., ¶ 281. These claims, too, cannot be separated from the Agreement. Further, that these claims are brought on behalf of Amos does not mean they are not subject to arbitration. *Terry*, 13 Wash. App. 2d at 170.

## V. CONCLUSION

In defiance of their contractual obligation to arbitrate all disputes arising out of the Agreement, Plaintiffs filed suit in this public forum. Because

Plaintiffs undisputedly entered into an arbitration agreement and delegated any threshold issue of arbitrability to the arbitrator, Amazon's motion to dismiss for improper venue and to compel arbitration should be granted.

DATED this 25th day of March, 2022.

Respectfully submitted,

SUMMIT LAW GROUP, PLLC

By */s/ Philip S. McCune*
By */s/ Diana S. Breaux*
    Philip S. McCune, WSBA #21081
    Diana S. Breaux, WSBA #46112
    315 Fifth Avenue S., Suite 1000
    Seattle, WA 98104-2682
    (206) 676-7000
    *philm@summitlaw.com*
    *dianab@summitlaw.com*

MORNINGSTAR LAW GROUP

By */s/ Christopher T. Graebe*
    Christopher T. Graebe
    NC Bar No. 17416
    421 Fayetteville Street, Suite 530
    Raleigh, NC 27601
    (919) 863-9092
    *cgraebe@mstarlaw.com*

Attorneys for Defendant Amazon Logistics, Inc.

## CERTIFICATE OF SERVICE AND WORD COUNT

The undersigned hereby certifies that he has this day electronically filed the foregoing Memorandum in Support of Defendant's Motion to Dismiss or Compel Arbitration Pursuant to Fed. R. Civ. P. Rule 12(b)(3), which contains 5,336 words exclusive of certificates and caption, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all of the following who are registered as authorized e-filers with the Court, and for the non-registered parties, the undersigned certifies that he has mailed the foregoing Memorandum in Support of Defendant's Motion to Dismiss or Compel Arbitration Pursuant to Fed. R. Civ. P. Rule 12(b)(3) by first-class mail, postage paid:

> Jesse H. Rigsby, IV
> Banks Law Firm, P.A.
> 4309 Emperor Blvd., Suite 110
> Durham, NC 27703
> *jrigsby@bankslawfirm.com*
>
> Danielle Barbour Wilson
> Banks Law Firm, P.A.
> P.O. Box 14350
> Research Triangle Park, NC 27709
> *dwilson@bankslawfirm.com*

This the 25th day of March, 2022.

> /s/ Christopher T. Graebe
> Christopher T. Graebe, NCSB No. 17416
> 4350 Lassiter at North Hills Ave., Suite 375
> Raleigh, North Carolina 27609
> Telephone: 919-863-9092
> Facsimile: 919-424-6407
> Email: cgraebe@ghslawfirm.com

25