

# EXHIBIT B

1

2

3

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| TRITON TRANSPORTATION LLC, an Oregon limited liability company; and LAST MILE DELIVERY LLC, an Oregon limited liability company, | Case No. 21CV41524 |
| Plaintiffs, | **DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| AMAZON LOGISTICS, INC., a Delaware corporation, | Motions Judge: Katharine von Ter Stegge |
| Defendant. | |

**MOTION**

Defendant Amazon Logistics, Inc. ("Amazon") moves for an order compelling Plaintiffs to arbitrate their claims against Amazon as required by the contracts they put at issue in this lawsuit.  The Motion is supported by the following memorandum of points and authorities, the declaration of Micah McCabe, and the court file.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiffs Triton Transportation LLC ("Triton") and Last Mile Delivery LLC ("Last Mile") are former Delivery Service Partners ("DSPs") of Amazon.  Their rights and obligations as DSPs were defined by the contracts that governed their participation in Amazon's DSP Program (the "Agreement").[1]  In June 2021, Triton and Last Mile breached the Agreement by

---

[1] The Agreement is submitted as Exhibit 1 to the accompanying declaration of Micah McCabe.

PAGE 1 -   DEFENDANT'S MOTION TO COMPEL ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

1  walking out during one of Amazon's busiest periods after Amazon declined to pay their highly

2  publicized and extortionate demand for $36 million in unsupported "damages" on less than

3  48 hours' notice.[2]  With this lawsuit, Plaintiffs reprise their grievances about the DSP Program.

4       Plaintiffs promised to arbitrate all disputes arising out of the Agreement.  The Agreement

5  unambiguously requires that "ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL

6  BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT."  (Emphasis in

7  original.)  Yet Plaintiffs defied this contractual commitment by asserting five separate claims

8  against Amazon in this lawsuit, each of which unequivocally arises out of the Agreement:

9  (1) fraud in the inducement of the Agreement; (2) breach of the Agreement's implied covenant

10  of good faith and fair dealing; (3) intentional interference with contractual relationships required

11  by the Agreement; and (4)-(5) violation of Washington's Franchise Investment Protection Act

12  and Consumer Protection Act, based on the theory that the Agreement created a franchise

13  relationship.  Under well-established federal and Washington state law, Plaintiffs should be

14  compelled to arbitrate each of these claims.

15                                    **II.    BACKGROUND**

16  **A.      The Parties and Agreement at Issue.**

17       Amazon Logistics is responsible for the transport and delivery of goods to Amazon.com

18  customers.  Through the Delivery Service Program, Amazon contracts with independently

19  owned delivery businesses like Plaintiffs to service routes in a geographic area.  Declaration of

20  Micah McCabe ("McCabe Decl."), ¶ 3.  Triton and Last Mile were formerly DSPs in Portland,

21  Oregon.  *Id.* ¶ 4.

22       When DSPs are onboarded, they review and execute the Agreement, which defines their

23  rights and obligations under the DSP Program.  *Id.*, ¶¶ 3, 7 & Ex. A.  Both Triton and Last Mile

---

24  [2] The amount demanded by Plaintiffs was widely reported in the national press.  *See e.g.,* Laura Gurley, <u>Amazon
25  Delivery Companies Revolt Against Amazon, Shut Down</u>, Vice (July 1, 2021),
   *https://www.vice.com/en/article/v7ez5x/amazon-delivery-companies-revolt-against-amazon-shut-down*; Matt
26  McFarland, <u>They took a stand against Amazon for their drivers. They say it cost them their businesses.</u>, CNN
   (Sep. 22, 2021), *https://www.cnn.com/2021/09/22/tech/amazon-dsp-portland/index.html*.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1    had the opportunity to review the Agreement before executing it by "clicking through" and

2    affirmatively accepting its terms.  Triton executed the Agreement on July 12, 2019, and Last

3    Mile did so on August 8, 2019.  *Id.*, ¶¶ 5-6.

4         The Agreement includes a broad arbitration clause that requires the parties to arbitrate all

5    disputes arising out of the Agreement before the AAA and under AAA rules:  "ANY DISPUTE

6    ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING

7    ARBITRATION, RATHER THAN IN COURT. . . . The arbitration will be conducted by the

8    American Arbitration Association (the "AAA") under its rules, including the AAA's

9    Commercial Arbitration Rules."  Agreement, § 13 (emphasis in original).

10        The Agreement gives DSPs the right to terminate the Agreement "at any time and for any

11   reason by giving [Amazon] ***at least 30 days prior written notice***," with more notice required

12   during the holiday season.  Agreement, § 6(a)(i) (emphasis added).  Plaintiffs terminated the

13   Agreement on only ***two days' notice***—far less than the 30 days required by the Agreement.

14   McCabe Decl., ¶¶ 10-11.[3]

15   **B.    The Parties' Dispute.**

16        This lawsuit follows Plaintiffs' abrupt and highly publicized termination of their

17   respective Agreements with Amazon in June 2021.  Without warning, on June 21, 2021,

18   Plaintiffs threatened to stop all services in less than 48 hours if Amazon did not accede to their

19   baseless demand for millions of dollars.  McCabe Decl., ¶ 11 & Ex. 2.  Plaintiffs made that

20   demand on "Prime Day"—one of Amazon's busiest times of the year.  McCabe Decl., ¶ 11.

21        The demand letter, like the Complaint here, accused Amazon of exercising control over

22   DSPs and compromising driver safety.  As Amazon advised Plaintiffs, many of the policies and

23   technologies they criticized were enacted for the safety and fair treatment of drivers; in fact,

24   Amazon has devoted hundreds of millions of dollars to protecting the safety of drivers

25   _____

26   [3] Amazon will bring Counterclaims based on Plaintiffs' willful breach of the Agreement's termination clause.  Like
     Plaintiffs' claims, Amazon's claims must be arbitrated.

PAGE 3 -    DEFENDANT'S MOTION TO COMPEL
            ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

1 ("Delivery Associates"), the public, and customers.  McCabe Decl., Ex. 3.  Amazon further

2 advised Plaintiffs that their abrupt termination would breach the Agreement, cause damage to

3 Amazon, and—still worse—harm the very employees whose interests they were purporting to

4 advance. *Id.*  As Amazon specifically advised, abruptly ceasing operations would leave

5 Plaintiffs' drivers unemployed.  Amazon offered to delay Plaintiffs' departure from the DSP

6 Program to avoid this outcome. *Id.*

7        Nonetheless, even after Amazon warned Plaintiffs of the consequences of their actions,

8 Plaintiffs refused to delay their exit.  Instead, Plaintiffs delivered on their threat—effective as of

9 9:00 a.m. PST on June 23, 2021, less than two days after their ultimatum, Plaintiffs stopped

10 providing services to Amazon during one of Amazon's busiest periods of the year.  McCabe

11 Decl., ¶¶ 10-11.

12        Four months later, on October 25, 2021, Plaintiffs initiated this lawsuit.  Plaintiffs

13 provided no advance notice to Amazon that they intended to file this lawsuit in state court

14 instead of abiding by the Agreement's binding dispute resolution procedures.  In the Complaint,

15 Plaintiffs lodge a litany of criticisms about the DSP Program and bring five separate claims

16 predicated on Amazon's direction of the program.  Plaintiffs' factual allegations, which span

17 nearly 19 pages, accuse Amazon of wrongfully exerting control over Plaintiffs, imposing

18 unreasonable requirements, and denying Plaintiffs bonuses and other compensation.[4]  As

19 Plaintiffs admit, these allegations directly implicate rights granted to Amazon under the

20 Agreement.  So, too, do Plaintiffs' claims—each of Plaintiffs' claims implicates express terms of

21 the Agreement.

22     **III.  GOVERNING LAW AND LEGAL STANDARDS**

23        The Agreement is governed by federal and Washington state law.  Agreement, § 13

24 ("This Agreement is governed by the United States Federal Arbitration Act, applicable United

25 _____

26 [4] Amazon denies the allegations raised by Plaintiffs and will vigorously defend the claims on the merits in the proper forum.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1  States federal law, and Washington state law, without reference to any applicable conflict of laws

2  rules."). Settled federal and Washington law both require the enforcement of arbitration

3  agreements.

4        The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable,

5  and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

6  contract." 9 U.S.C. § 2. The FAA applies to arbitration agreements included in a transaction

7  that involves interstate commerce. *See, e.g., Industra/Matrix Joint Venture v. Pope & Talbot,*

8  *Inc.*, 341 Or. 321, 329, 142 P.3d 1044 (2006); *Pinkis v. Network Cinema Corp.*, 9 Wash. App.

9  337, 339-40, 512 P.2d 751 (1973).[5] Congress passed the FAA to "reverse the longstanding

10  judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.

11  20, 24, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991). And "[t]he 'principal purpose' of the FAA is

12  to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T*

13  *Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011)

14  (quoting *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488

15  (1989)). As the Supreme Court has repeatedly emphasized, "courts must rigorously enforce

16  arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570

17  U.S. 228, 228, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (internal quotations omitted).

18        The FAA creates a body of federal substantive law that imposes a presumption of

19  arbitrability. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103

20  S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) ("any doubts concerning the scope of arbitrable issues

21

---

22  [5] The FAA provides an exemption from its application for employment contracts of "seamen, railroad employees [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This exemption does not apply to the Agreement, which is a contract between Amazon and independent business entities. *See D.V.C.*

23  *Trucking, Inc. v. RMX Global Logistics, Inc.*, No. Civ. A 05-CV-00705, 2005 WL 2044848, at *3 (D. Colo. Aug. 24, 2005) (holding corporation was not a "transportation worker," and contract between two companies was an

24  "arm's length business contract for carrier services" not an employment contract); *R&C Oilfield Services, LLC, v. American Wind Transport Group,* LLC, 447 F. Supp. 3d 339, 347 (W.D. Pa. 2020) ("The Agreement here is a

25  commercial contract between two business entities. It cannot reasonably be construed as a contract of employment governing 'work by workers.'"). Moreover, even if this exemption applied here, it would not permit Plaintiffs to

26  avoid arbitration because the Agreement is subject to Washington law, which favors arbitration and provides no such exemption.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

1  should be resolved in favor of arbitration, whether the problem at hand is the construction of the

2  contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.")  The

3  substantive federal law of arbitrability applies to any arbitration agreement that is included in a

4  transaction involving interstate commerce, even "state-law claims brought in state court."

5  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S. Ct. 1204, 163 L. Ed. 2d

6  1038 (2006) (citations omitted).  The FAA does not, however, completely displace state law:

7  courts "apply[] general state-law principles of contract interpretation to the interpretation of an

8  arbitration agreement."  *Volt Info. Scis., Inc.*, 489 U.S. at 475.  Thus, in determining whether

9  parties have agreed to arbitrate a dispute, the court applies "general state-law principles of

10  contract interpretation, while giving due regard to the federal policy in favor of arbitration."

11  *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1044 (9th Cir. 2009).

12         Here, the Agreement specifies the application of Washington state law.  Agreement, § 1.

13  Consistent with federal law, "Washington courts apply a strong presumption in favor of

14  arbitration."  *Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc.*, 148

15  Wash. App. 400, 405, 200 P.3d 254 (2009).  "In interpreting an arbitration clause, the intentions

16  of the parties as expressed in the agreement controls, but 'those intentions are generously

17  construed as to issues of arbitrability.'"[6]  *Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165,

18  1170 (W.D. Wash. 2013) (quoting *W.A. Botting Plumbing and Heating Co. v. Constructors-

19  Pamco*, 47 Wash. App. 681, 684, 736 P.2d 1100 (1987)).  "Any doubts should be resolved in

20  favor of coverage, and further, all questions upon which the parties disagree are presumed to be

21  within the arbitration provision unless negated expressly or by clear implication."  *Heights*, 148

22  Wash. App. at 405.

23  _____

[6] Oregon's policy is also "to construe general arbitration agreements broadly to enhance arbitrability of disputes."

24  *Budget Rent-A-Car of Washington-Oregon, Inc. v. Todd Inv. Co.*, 43 Or. App. 519, 524, 603 P.2d 1199 (1979).  "In
determining whether an arbitration agreement arguably covers a dispute," Oregon courts "examine not only the

25  arbitration clause, but the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of
the contract, the practical construction the parties themselves have placed on the contract by their acts, and other

26  external circumstances that cast light on the intent of the parties."  *Snow Mountain Pine, Ltd. v. Tecton Laminates
Corp.*, 126 Or. App. 523, 529, 869 P.2d 369 (1994).

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 1:22-cv-00055-CCE-JEP   Document 19-2   Filed 04/28/22   Page 7 of 58

1    Where, as here, an arbitration clause is governed by both federal and state law, state law

2    provides an alternate ground for compelling arbitration. *See e.g., Romero v. Watkins and*

3    *Shepherd Trucking, Inc.*, No. 20-55768, 2021 WL 3675074, at *2-3 (9th Cir. Aug. 20, 2021)

4    (compelling arbitration of transportation worker's claims pursuant to Nevada law, where contract

5    subject to exemption from FAA provided for the application of Nevada law); *Palcko v. Airborne*

6    *Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (holding that the FAA-exempted agreement to

7    arbitrate was still subject to arbitration pursuant to Washington state law); *cf. Rittman v.*

8    *Amazon.com, Inc.*, 971 F.3d 904, 919-20 (2020) (holding that arbitration clause was not subject

9    to state law and therefore declining to compel arbitration). Indeed, courts can compel arbitration

10   under state law without deciding whether the FAA applies. *See Adams v. Parts Distribution*

11   *Xpress, Inc.*, No. 2:20-cv-00697-JMG, 2021 WL 1088231, at *4 (E.D. Pa. Mar. 22, 2021)

12   (compelling under state law while "assuming, without deciding" that FAA exemption

13   applied).

14                              **IV. ARGUMENT**

15           A court has only a limited gatekeeper function in determining whether a dispute is

16   arbitrable. In this role, the court considers only whether (1) a valid agreement to arbitrate exists

17   and (2) if so, whether the dispute falls within the scope of the parties' arbitration agreement.

18   *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The court's

19   analysis in this function is limited because, "[b]y its terms, the Act 'leaves no place for the

20   exercise of discretion.'" *Id.*

21           Thus, the task before the Court is to determine whether the parties' unambiguous

22   agreement to arbitrate "ANY DISPUTE ARISING OUT OF [THE] AGREEMENT" is valid and

23   encompasses Plaintiffs' claims here. Agreement, § 13 (emphasis in original). Settled law

24   compels an affirmative answer on both counts.

25

26

PAGE 7 -    DEFENDANT'S MOTION TO COMPEL
            ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

**A.      The Agreement Contains a Valid Agreement to Arbitrate.**

The threshold inquiry on a motion to compel arbitration is whether a valid agreement to arbitrate exists. *Peters*, 2 F. Supp. 3d at 1169. In conducting this inquiry, the court applies ordinary principles of contract interpretation under the applicable law. *Id.* at 1170. Accordingly, Washington law guides the analysis here. (*See supra* p. 6.)

Under Washington law, contracts formed online where parties must click a button stating they agree to the contract terms are enforceable like any other contract. *See, e.g.*, *Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box"); *Riensche v. Cingular Wireless, LLC*, 2006 WL 3827477, at *2 (W.D. Wash. Dec. 27, 2006) (compelling arbitration where plaintiff "was required to agree to the Terms online"). As explained above, Plaintiffs each affirmatively accepted the Agreement when enrolling in the DSP Program. (*See supra* p. 1-2.) And they do not dispute that the Agreement is a valid and enforceable contract. Indeed, they specifically allege in the Complaint that they entered into the Agreement, and they seek damages for Amazon's alleged breach. *See, e.g.*, Compl., ¶ 14 ("Plaintiffs executed a DSP Program Agreement … with ALI."), ¶ 90 ("Defendant owed a duty of good faith and fair dealing to Plaintiffs by virtue of the Agreement … The Agreement grants Defendant wide and exclusive discretion to manage all aspects of the DSP program."), ¶ 93 ("As a result of Defendant's breaches, Plaintiffs suffered actual damages.").

Plaintiffs also cannot dispute that the parties expressed a clear intent to arbitrate any disputes arising out of the Agreement. Washington courts apply the manifest theory of contract interpretation, by which the court "attempt[s] to determine the parties' intent by focusing on the objective manifestations of the agreement" by "imput[ing] an intention corresponding to the reasonable meaning of the words used." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1 Wash.2d 493, 503, 115 P.3d 262 (2005). "The intent of the parties to a contract 'may be

2 discovered not only from the actual language of the agreement, but also from viewing the

3 contract as a whole, the subject matter and objective of the contract, all circumstances

4 surrounding the making of the contract, the subsequent acts and conduct of the parties to the

5 contract, and the reasonableness of respective interpretations advocated by the parties.'" *Peters*,

6 2 F. Supp. 3d at 1170 (quoting *Bort v. Parker*, 110 Wash. App. 561, 573, 42 P.3d 980 (2002)).

7 "In interpreting an arbitration clause, the intentions of the parties as expressed in the agreement

8 controls, and 'those intentions are generously construed as to issues of arbitrability.'" *Id.*

9 (quoting *W.A. Botting Plumbing and Heating Co. v. Constructors-Pamco*, 47 Wash. App. 681,

10 684, 736 P.2d 1100 (1987)).

11      The Agreement emphatically states that "ANY DISPUTE ARISING OUT OF THIS

12 AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN

13 COURT." Agreement, § 13 (emphasis in original). This unambiguous language cannot

14 reasonably be construed as anything other than a valid agreement to arbitrate.

15      Further, because the Agreement provides for the application of Washington state law to

16 the Agreement, including the arbitration clause, Plaintiffs cannot avoid arbitration by arguing

17 that the FAA does not apply—under the inapplicable "transportation worker" exemption or any

18 other theory Plaintiffs conjure to avoid their contractual obligation to arbitrate. *See supra* n.5.

19 **B.      The Arbitration Agreement Covers Plaintiffs' Claims.**

20      **1.      Plaintiffs Delegated Issues of Arbitrability to the Arbitrator**

21      This Court need not address the scope of the Agreement's arbitration clause because the

22 parties expressly delegated that issue to the arbitrator.

23      As the U.S. Supreme Court recently emphasized, "if a valid [arbitration] agreement

24 exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not

25 decide the arbitrability issue," and must compel arbitrability issues to the arbitrator. *Henry*

26 *Schein, Inc. v. Archer & White Sales, Inc.*, __ U.S. __, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1   (2019); *accord Brice v. Haynes Inv., LLC*, 13 F.4th 823, 837 (9th Cir. 2021) (reversing order

2   denying motion to compel arbitration based on valid delegation provision:  "Refusing to allow an

3   arbitrator to decide the question, even if we think the answer is obvious, runs counter to the

4   Supreme Court's clear instructions that 'a court may not decide an arbitrability question that the

5   parties have delegated to an arbitrator.'") (quoting *Henry Schein*); *LeBoeuf v. Nvidia Corp.*, 833

6   F. App'x 465, 467 (9th Cir. 2021) ("the Supreme Court requires enforcement of [delegation]

7   clauses").  Thus, Amazon need only establish the "existence" of an arbitration agreement

8   delegating arbitrability issues to the arbitrator, as this Agreement does.

9           An arbitration agreement "clearly and unmistakably" delegates arbitrability to the

10  arbitrator when it incorporates arbitration rules that give the arbitrator the authority to decide

11  arbitrability.  *Raven Offshore Yacht, Shipping, LLP v. F.T. Holdings, LLC*, 199 Wash. App. 534,

12  541, 400 P.3d 347 (2017); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  The

13  AAA rules specifically grant such authority to the arbitrator.  *See* AAA Commercial Arbitration

14  Rules, R-7(a) (granting arbitrator authority to rule on "the arbitrability of any claim or

15  counterclaim").  Under Washington law, incorporation of the AAA rules "clearly and

16  unmistakably manifest[s] [an] agreement to be bound by those rules."  *Raven*, 199 Wash. App. at

17  541 (construing arbitration clause applying to disputes "arising from" the agreement and

18  incorporating similar Maritime Arbitration Association rules); *Woolley v. El Toro.com, LLC*,

19  No. 81218-1-I, 2021 WL 1788526 at *3-*4 (Wash. App. Div. I, May 3, 2021) (incorporation of

20  AAA rules removed threshold question of arbitrability from trial court), *rev. den.*, 198 Wash.2d

21  1012, 495 P.3d 835 (2021); *In re Estate of Anches*, No. 78732-2-I, 2019 WL 3417100 at *2-*3

22  (Wash. App. Div. I, July 29, 2019) ("By incorporating the AAA rules into the arbitration

23  provision, the parties again expressed their intent to have the arbitrator, and not a court, decide

24  arbitrability.").  The Ninth Circuit is in accord, holding that "[i]ncorporation of the AAA rules

25  constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate

26  arbitrability."  *Brennan*, 796 F.3d at 1130; *G.G. v. Valve Corp.*, 799 F. App'x. 557, 558 (9th Cir.

PAGE 10 -   DEFENDANT'S MOTION TO COMPEL
            ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

1  2020) (applying Washington law and holding that incorporation of AAA rules delegated

2  arbitrability to arbitrator).  The Ninth Circuit is not alone in this holding: "Virtually every circuit

3  to have considered the issue has determined that incorporation of the [AAA] arbitration rules

4  constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."

5  *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).

6  Here, the arbitration agreement Plaintiffs accepted expressly incorporates the AAA rules,

7  providing:  "The arbitration will be conducted by the American Arbitration Association (the

8  'AAA') under its rules, including the AAA's Commercial Arbitration Rules."  Agreement, § 13.

9  The Agreement then directs the parties to those rules:  "The AAA's rules are available at

10  www.adr.org or by calling 1-800-778-7879."  That is, the Agreement incorporates and

11  specifically directs the parties to the AAA rules that give the arbitrator authority over issues of

12  arbitrability.  By agreeing to the AAA rules, the parties delegated the issues of arbitrability to the

13  arbitrator.  *Raven*, 199 Wash. App. at 541.  As such, this Court "possesses no power to decide the

14  arbitrability issue" and must compel arbitration on the arbitrability of Plaintiff's claims.  *Henry*

15  *Schein*, S. Ct. at 529.

16  **2.  Plaintiffs' Claims All Arise Out of the Agreement.**

17  Because the parties delegated issues of arbitrability to the arbitrator, the Court should not

18  consider the scope of the arbitration clause.  Should the Court nevertheless consider the issue, it

19  would not change the outcome:  Plaintiffs' claims all arise out of the Agreement and must be

20  arbitrated.

21  Consistent with the majority view among state and federal courts, Washington law

22  affords broad construction to clauses requiring arbitration of all disputes "arising out of" a

23  contract.  Such terms are construed to encompass all claims relating to the agreement, including

24  noncontract claims.  *See David Terry Investments, LLC-PRC v. Headwaters Development Group*

25  *LLC*, 13 Wash. App. 2d 159, 168-69, 463 P.3d 117 (2020) (compelling arbitration of breach of

26  contract, unjust enrichment, fraud, and conversion claims pursuant to analogously worded

PAGE 11 -   DEFENDANT'S MOTION TO COMPEL
             ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

1   arbitration clause); *see also JC Aviation Invest., LLC v. Hytech Power, LLC*, No. 81539-3-I,

2   2021 WL 778043, *3 n.11 (Wash. App. Div. I, March 1, 2021) ("Clauses requiring arbitration of

3   disputes 'arising out of' are interpreted broadly.").[7]   Under Washington law, a valid agreement to

4   arbitrate extends to statutory claims and claims sounding in tort. *See In re Jean F. Gardner*

5   *Amended Blind Trust*, 117 Wash. App. 235, 239-40, 70 P.3d 168 (2003) (compelling arbitration

6   of tort claims that "arise from the agreement"); *Mendez v. Palm Harbor Homes, Inc.*, 111

7   Wash. App. 446, 454, 45 P.3d 594 (2002) ("In Washington, it is well settled that [Consumer

8   Protection Act] and other statutory claims are subject to arbitration under the FAA."); *Precision*

9   *Husky Corp. v. Mountain Equipment, Inc.*, No. 53054-2-I, 2004 WL 2699920, at *3 (Wash. App.

10  Div. I, Nov. 29, 2004) ("Parties cannot escape contract arbitration simply by casting their claims

11  in terms of tort.").

12          Courts also recognize that Washington law instructs that the very purpose of arbitration—

13  "inexpensive and efficient resolution"—is undermined when parties are allowed "to split claims

14  involving the same core facts into two forums." *Terry*, 13 Wash. App. 2d at 168.   Thus,

15  "[u]nless the parties clearly state a desire to pursue related claims in two forums, courts should

16  not do it for them." *Id.* at 168-69.

17          *Terry* is instructive.   There, the plaintiff, an investor in a commercial real estate joint

18  venture, sued his development partners for fraud, unjust enrichment, conversion and breach of

19  contract alleging misrepresentations about their ability to perform and wrongful retention of

20  investment funds. *Id.* at 165.   The joint venture agreement required arbitration of disputes "over

21  this Agreement." *Id.* at 167.   After the trial court ruled that only the contract claim was subject

22  to arbitration and exercised jurisdiction to stay the noncontract claims pending arbitration, the

---

23  [7] Under the minority view, arbitration clauses requiring the arbitration of claims "arising under" an agreement are
24  given narrower scope than clauses requiring arbitration of claims "relating to" an agreement. *See Terry*, 13
    Wash. App. 2d at 168 (analyzing authority).   In *Terry*, the court specifically rejected this approach as inconsistent
25  with the strong policy favoring arbitration.   The majority of federal courts are in accord. *See EFund Capital*
    *Partners v. Pless*, 150 Cal. App. 4th 1311, 1326-30, 59 Cal. Rptr. 3d 340 (2007) (collecting cases).   Each of
26  Plaintiffs' claims in this case involves the formation, interpretation, and parties' performance under the Agreement,
    and thus is subject to arbitration even if the arbitration clause is given the disfavored narrow construction.

PAGE 12 -   DEFENDANT'S MOTION TO COMPEL
            ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

1   Washington Court of Appeals reversed and held that all the claims were subject to arbitration.

2   *Id.* at 169.  The court reasoned that the "central component" of each claim was "the

3   agreements—the formation thereof, the performance thereof, and the breach thereof."  *Id.*  The

4   court further observed that the contract and noncontract claims would require similar evidence.

5   *Id.*  Based on these factors, the court concluded that the claims "must be litigated in one forum—

6   arbitration."  *Id.*

7       As in *Terry*, Plaintiffs' five claims share a "central component"—the Agreement and,

8   more specifically, the control granted to Amazon under that agreement. 13 Wash. App. 2d at

9   169.  Here, too, each of Plaintiffs' claims arise out of the Agreement—each is inextricably tied to

10  the Agreement and the parties' performance thereunder.

11          a.      **Plaintiffs' Implied Covenant Claim Arises Out of the Agreement.**

12          Plaintiffs rightly acknowledge that the implied covenant of good faith and fair dealing is

13  a product of the Agreement.  Compl., ¶¶ 88-93 ("Defendant owed a duty of good faith and fair

14  dealing to Plaintiffs *by virtue of the Agreement*.") (emphasis supplied).  Under settled

15  Washington law, the implied covenant of good faith and fair dealing arises from a contract's

16  express terms and obligates contracting parties "to cooperate with each other so that each may

17  obtain the full benefit of performance."  *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569, 807

18  P.2d 356 (1991).  Further, "covenants of good faith and fair dealing do not trump express terms

19  or unambiguous rights in a contract."  *Myers v. State*, 152 Wash. App. 823, 828, 218 P.3d 241

20  (2009).  In sum, implied covenants exist only with respect to contractual duties and are limited

21  by the contract's express terms.  And a claim of breach of the implied covenant necessarily

22  requires interpretation of an agreement's express terms and "arises under" the contract.  *See*

23  *Building Materials and Const. Teamsters Local No. 216 v. Granite Rock Co.*, 851 F.2d 1190,

24  1193-94 (9th Cir. 1988) (claim of breach of implied covenant "clearly involves the proper

25  interpretation of the agreement" and is subject to arbitration).

26

PAGE 13 -   DEFENDANT'S MOTION TO COMPEL
            ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

1    Here, Plaintiffs allege that the Agreement gave Amazon discretion to "manage all aspects

2    of the DSP Program" and they exercised that discretion to Plaintiffs' detriment.  Compl., ¶ 90.

3    That is, Plaintiffs' implied covenant claim puts at issue the Agreement's express terms.  As in

4    *Building Materials*, this claim requires interpretation of the Program Agreement and must be

5    arbitrated.

6            **b.    Plaintiffs' Statutory Claims Arise Out of the Program Agreement.**

7            Plaintiffs bring two duplicative statutory claims alleging violation of Washington's

8    Franchise Investment Protection Act, RCW 19.110 *et seq.* ("FIPA"), and Washington's

9    Consumer Protection Act, RCW 19.86 *et seq.* ("CPA").  Plaintiffs accuse Amazon of selling an

10   unregistered franchise and related acts.  The crux of Plaintiffs' FIPA claim is that the Agreement

11   created a franchise relationship.  *See* Compl., ¶ 106 ("Defendant sold Plaintiffs a franchise under

12   RCW 19.100.010(6) when the parties entered into the Agreement.").  Plaintiffs' CPA claim

13   merely recasts the FIPA allegations as violations of the CPA.  *See* Compl., ¶¶ 122-123 (alleging

14   that Plaintiffs' violations of the FIPA constitute violations of the CPA).

15           Claims under FIPA and CPA are subject to mandatory arbitration provisions.  *See Allison*

16   *v. Medicab Intern., Inc.*, 92 Wash.2d 199, 203-04, 597 P.2d 380 (1979) (failure of defendants to

17   register as a franchise under RCW 19.100.020 did not vitiate arbitration clause or render the

18   agreement void; "It is simply a controversy 'arising out of or in connection with (the)

19   Agreement' and as such becomes subject to the arbitration agreement enforceable under the

20   federal arbitration act."); *Pinkis*, 9 Wash. App. at 346-47 (affirming order compelling arbitration

21   of Franchise Act claim); *Mendez*, 111 Wash. App. at 454 ("In Washington, it is well settled that

22   CPA and other statutory claims are subject to arbitration under the FAA.").

23           As Plaintiffs' allegations highlight, the FIPA and CPA claims necessarily raise questions

24   of contract interpretation as they require the Court to construe the Agreement's terms to

25   determine whether, in fact, the Agreement constitutes the sale of a franchise.  These claims arise

26   out of the Agreement and must be arbitrated.

PAGE 14 -    DEFENDANT'S MOTION TO COMPEL
             ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155169402.1

1

          **c.**      **Plaintiffs' Tort Claims Arise Out of the Agreement.**

2         As discussed *supra,* under settled law, pleading a claim in tort does not allow a party to

3  evade a contractual requirement to arbitrate. Plaintiffs' tort claims of fraud and tortious

4  interference are directed to the Agreement's terms and must be arbitrated.

5         Plaintiffs' fraud claim is directed to alleged misrepresentations by Amazon about the

6  DSP Program, including the extent of control Plaintiffs would have over their business

7  operations. *See* Compl., ¶¶ 81-87 (accusing Defendant of "falsely representing to Plaintiffs that

8  Plaintiffs would have control over their business operations."). This claim is squarely directed to

9  alleged representations made prior to the execution of the contract. ("Had Plaintiffs known the

10  truth about the DSP Program, they would not have proceeded with the Agreement.")

11        Under settled law, a claim that a party was fraudulently induced into entering a contract is

12  still subject to that contract's mandatory arbitration provision. *See Prima Paint Corp. v. Flood &*

13  *Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) (claim that

14  execution of contract was procured by fraud was subject to contract's arbitration provision); *see*

15  *also Pinkis*, 9 Wash. App. at 345 ("If the federal arbitration act is to be given the required effect,

16  . . . the aggrieved party submits his grievances (including a claim of fraud inducing entry into the

17  entire contract) to the forum of arbitration rather than to the state or federal courts."). This

18  authority is controlling here.

19        Further, Plaintiffs' own allegations show that this claim cannot be separated from the

20  Agreement's terms. Plaintiffs acknowledge that "The Agreement grants Defendant wide and

21  exclusive direction to manage all aspects of the DSP Program." Compl., ¶ 90. The Agreement

22  also has a merger clause stating that it "is the complete agreement of the parties relating to the

23  Services and supersedes all prior agreements and discussions relating to same." Agreement,

24  § 15. To prevail on their fraud claim, Plaintiffs will have to prove a misrepresentation of fact

25  that is not defeated by the express terms of the Agreement, including the merger clause.

26

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1    Plaintiffs' tortious interference claim apparently is directed to Plaintiffs' business

2  relationships with Hertz and Amazon's alleged "improper control over Plaintiffs' operations" by

3  interfering with these relationships.  Compl., ¶¶ 94-102.  This claim, too, requires interpretation

4  of the Agreement's terms.  Plaintiffs' entire theory of wrongful interference is that Amazon

5  exercised "improper control" over their business operations.  Amazon's rights of control are

6  determined by the Agreement, of course, and whether they exceeded that authority is an issue

7  that "aris[es] out of" the Agreement.[8]

8                              **V.   CONCLUSION**

9    In defiance of their contractual obligation to arbitrate all disputes arising out of the

10  Agreement, Plaintiffs filed suit in this public forum.  Because Plaintiffs undisputedly entered into

11  an arbitration agreement and delegated any threshold issue of arbitrability to the arbitrator,

12  Amazon's motion to compel arbitration should be granted.

13

14  DATED:  December 13, 2021                **PERKINS COIE LLP**

15

16                              By:  _/s/ Sarah J. Crooks_____
                                  Sarah J. Crooks, Bar No. 971512
17                                 SCrooks@perkinscoie.com
                                  1120 N.W. Couch Street, Tenth Floor
18                                 Portland, Oregon 97209-4128
                                  Telephone:  503.727.2000
19                                 Facsimile:  503.727.2222

20                              Attorneys for Defendant

21

22

23

24

_____

25  [8] Again, Plaintiffs' allegations highlight the overlap between this claim and the Agreement.  Plaintiffs allege that
they entered into a contractual relationship with Hertz so that they could carry out the terms of the *Agreement,* and
26  that Amazon "interfered" with that relationship to cause Plaintiffs to contract with Amazon's allegedly preferred
provider under the Agreement, Element.  Compl., ¶ 98.

PAGE 16 -   DEFENDANT'S MOTION TO COMPEL
             ARBITRATION

131691.1303.0141\155169402.1

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing DEFENDANT'S MOTION TO COMPEL ARBITRATION on the following:

Thomas R. Rask, III, OSB #934031
James D. O'Donnell, OSB #171284
Kell, Alterman & Runstein, L.L.P.
520 SW Yamhill, Suite 600
Portland, OR 97204
*trask@kelrun.com*
*jodonnell@kelrun.com*

    Attorneys for Plaintiffs

to be sent by the following indicated method or methods, on the date set forth below:

| X | by **sending via the court's electronic filing system** |
| X | by **email** |
| X | by **mail** |
|   | by **hand delivery** |

DATED: December 13, 2021          **PERKINS COIE LLP**

                                  By: _/s/ Sarah J. Crooks_____
                                      Sarah J. Crooks, Bar No. 971512
                                      SCrooks@perkinscoie.com
                                      1120 N.W. Couch Street, Tenth Floor
                                      Portland, Oregon 97209-4128
                                      Telephone: 503.727.2000
                                      Facsimile: 503.727.2222

                                  Attorneys for Defendant

131691.1303.0141\155169402.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1

2

3

4

5

6

7

8          IN THE CIRCUIT COURT OF THE STATE OF OREGON

9              FOR THE COUNTY OF MULTNOMAH

10  TRITON TRANSPORTATION LLC, an
    Oregon limited liability company; and LAST
11  MILE DELIVERY LLC, an Oregon limited
    liability company,                              Case No. 21CV41524
12
              Plaintiffs,                           **PLAINTIFFS' RESPONSE IN**
13                                                  **OPPOSITION TO DEFENDANT'S**
        v.                                          **MOTION TO COMPEL**
14                                                  **ARBITRATION**
    AMAZON LOGISTICS, INC., a Delaware
15  corporation,

16            Defendant.

17

18          Plaintiffs Triton Transportation LLC ("Triton") and Last Mile Delivery LLC ("Last

19  Mile") (collectively, "Plaintiffs") submit the following response in opposition to defendant

20  Amazon Logistics, Inc.'s ("Defendant") Motion to Compel Arbitration.

21
        **I.    INTRODUCTION**
22
23          Plaintiffs filed this action in Oregon state court, asserting claims for fraud, breach of good

24  faith and fair dealing, interference with economic relations, and violations of Washington's

25  Franchise Investment Protection Act and Consumer Protection Act.  Defendant has moved to

26  compel arbitration pursuant to the parties' agreement.  Plaintiff acknowledges that the parties'

Page 1 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL
         ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

agreement contains an arbitration provision. However, the arbitration provision is unenforceable for two reasons: (1) the Federal Arbitration Act's ("FAA") "transportation worker" exemption precludes enforcement of the provision; and (2) Washington's Uniform Arbitration Act ("WUAA") does not apply. For those reasons, this Court should deny Defendant's Motion.

## II.     BACKGROUND FACTS

Triton is a single-member limited liability company organized under the laws of Oregon. Triton's single member is an Oregon resident named Ryan Schmutzer ("Mr. Schmutzer"). *Declaration of Mr. Schmutzer* ("*Schmutzer Decl.*"), at 1. Mr. Schmutzer is the sole owner-operator of Triton. *Id*. at 1 Mr. Schmutzer is an experienced transportation and logistics professional. *Id*. at 2.

Last Mile is a limited liability company organized under the laws of Oregon. *Declaration of Tracy Bloemer* ("*Bloemer Decl.*"), at 1. Last Mile has two members: Tracy Bloemer ("Ms. Bloemer") and Ryan Bloemer ("Mr. Bloemer") who both reside in Washington (collectively, the "Bloemers"). *Id*. at 1. Ms. Bloemer and Mr. Bloemer are the sole owner-operators of Last Mile. *Id*. at 1. The Bloemers have worked in various industries and in different capacities over the last 25 years. *Id*. at 2.

After seeing Defendant's advertisements, the Bloemers and Mr. Schmutzer decided to join Defendant's Delivery Service Partner ("DSP") program to deliver packages for Defendant. Defendant requires that each person who is interested in joining the program create a business entity and operate as an independent contractor. *Id*. at 3; *Schmutzer Decl.* at 3. Mr. Schmutzer therefore established Triton and the Bloemers established Last Mile. *Bloemer Decl.*. at 3; *Schmutzer Decl.* at 3. Both entities were created to deliver packages exclusively for Defendant. *Bloemer Decl.*. at 3; *Schmutzer Decl.* at 3.

Page 2 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL
        ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

Defendant's DSP program is a fairly new concept. For years, Amazon.com, Inc. ("Amazon") relied on traditional delivery channels, such as FedEx and UPS, to deliver billions of packages to millions of consumers around the country. *Complaint*, at 2-3. A few years ago, in an effort to have more control over its deliveries, Amazon established its own delivery and logistics network, known as the DSP program. *Id.* at 3. Under this new program, Amazon contracts with Defendant for delivery and transportation of the products it sells to consumers online. *Id.* Defendant, in turn, relies on people like Mr. Schmutzer and the Bloemers to transport goods for Defendant and to hire and supervise other drivers to transport and deliver those goods. As mentioned above, Defendant requires that these individuals, like Mr. Schmutzer and the Bloemers, perform this delivery and transportation work as independent contractors through a business entity. *Id.*

Last Mile and Triton officially joined the DSP program in 2019. *Bloemer Decl.*. at 3; *Schmutzer Decl.* at 3. The DSP agreement the parties executed contains the following provision concerning arbitration:

> "Governing Law; Submission to Arbitration. This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal law, and Washington state law, without reference to any applicable conflict of laws rules. ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT."

*Ex. 1 to Declaration of Micah McCabe*, at 5-6 (DSP Agreement) (emphasis in original provision).

For the next two years, Last Mile and Triton delivered packages daily for Defendant throughout the Portland-metro area, including across state lines into Washington. *Bloemer Decl.* at 4; *Schmutzer Decl.* at 4. Mr. Schmutzer and the Bloemers, as the sole owner-operators of their respective businesses, personally transported goods and directly supervised drivers under

Page 3 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

their direction.  *Bloemer Decl.* at 5;  *Schmutzer Decl.* at 5.  Nearly every day for two years, Mr. Schmutzer, the Bloemers, and the drivers under their supervision would pick up packages at Defendant's Amazon warehouse in North Portland, load their trucks, and personally transport or cause other drivers to transport those goods to consumers across the Portland-metro area. *Bloemer Decl.* at 5;  *Schmutzer Decl.* at 5.

As alleged in the Complaint, Defendant deprived Mr. Schmutzer and the Bloemers of any meaningful choice in deciding how to operate their businesses, manage their drivers, and make deliveries for Defendant.  While Mr. Schmutzer and the Bloemers were DSPs, Defendant dictated, directly managed, and controlled nearly every aspect of their operations, including but not limited to:

- requiring Plaintiffs to operate exclusively under the Defendant's trademarks;

- requiring Plaintiffs to follow and operate pursuant to Defendant's method of operations;

- requiring Plaintiffs to be economically tied to Defendant for the right to conduct their exclusive business operations;

- requiring Plaintiffs to make purchases through authorized vendors only;

- controlling all hiring of Plaintiffs' drivers;

- retaining the ability to terminate and discipline Plaintiffs' drivers;

- providing training materials to the Plaintiffs and training all their drivers;

- requiring Plaintiffs' drivers to wear Defendant's branded clothing;

- dictating the personal grooming requirements of Plaintiffs' drivers and manner and type of clothing drivers wear;

- determining the make, model, and style of delivery van to be used while Plaintiffs'

Page 4 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL
ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

drivers deliver packages;

- requiring Plaintiffs to sign a contract with Element Fleet for delivery vehicles;

- requiring Plaintiffs to contract with Aon for insurance and Paycom for payroll;

- requiring that delivery vans contain Defendant's insignia and logos and prohibiting Plaintiffs from displaying their own name or branding on the vans;

- requiring Plaintiffs' drivers to arrive at and load and unload packages from Defendant's fulfillment and warehouse centers for delivery;

- monitoring Plaintiffs' drivers' performance of pre-trip and post-trip delivery van inspections and Plaintiffs' performance and compliance with Defendant's requirements;

- requiring that Plaintiffs' drivers deliver packages to Amazon customers according to a precise schedule created by Defendant that dictates the order of delivery and provides the exact route that Plaintiffs' drivers must follow and does not allow Plaintiffs to modify any routes;

- dictating how many packages Plaintiffs' drivers must deliver each day on each route and not allowing Plaintiffs to modify package counts;

- tracking delivery performance including but not limited to the number of packages Plaintiffs' drivers deliver each day, the location of Plaintiffs' drivers at any given time, whether drivers touch their cell phones while driving, whether drivers are wearing seatbelts while moving faster than six miles per hour, whether drivers accelerate or stop too quickly, and the efficiency of the deliveries as reported through Defendant's handheld devices, the Flex App, and/or the Mentor App;

- supervising Plaintiffs' work and their drivers on a daily basis;

Page 5 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

- evaluating the performance of Plaintiffs' drivers on a periodic basis in accordance with Defendant's specific policies and procedures;

- setting minimum wages, insurance coverage, and benefits that Plaintiffs must provide to their own drivers;

- requiring Plaintiffs to submit to periodic audits so that Defendant can verify that Plaintiffs have complied with Defendant's requirements with respect to wages, insurance, and benefits for Plaintiffs' drivers;

- ordering Plaintiffs' drivers to reattempt delivery when Plaintiffs' drivers do not complete a delivery; and

- maintaining control over and access to Plaintiffs' payroll accounts.

*Complaint*, at ¶ 16.

As a result of Defendant's conduct, the parties' relationship eventually soured. For months, Mr. Schmutzer and the Bloemers complained to Defendant about driver safety issues and about Defendant's near-total control over their work. *Bloemer Decl.* at 7; *Schmutzer Decl.* at 7. Mr. Schmutzer and the Bloemers repeatedly requested that Defendant make changes so that they could manage their drivers, their daily routes and deliveries, and their general work operations in order to ensure a more productive, cost-effective, and safer working environment for their drivers and for themselves. *Id.* at 7; *Bloemer Decl.* at 7. Defendant refused to allow any changes. *Id.* at 7; *Schmutzer Decl.* at 7.

In June 2021, Mr. Schmutzer and the Bloemers made a final written demand to Defendant. Defendant again refused to allow any changes. *Bloemer Decl.* at 8; *Schmutzer Decl.* at 8. On or about June 25, 2021, Defendant deactivated Plaintiffs' drivers, thereby preventing

Page 6 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

1  Plaintiffs from making any further deliveries and effectively terminating their respective DSP

2  agreements. *Bloemer Decl.* at 8; *Schmutzer Decl.* at 8. This suit followed.

3  **III.    ARGUMENT**

4          The parties specified in their agreement that the FAA applies to the arbitration provision.

5  Under the FAA, arbitration agreements are generally "'valid, irrevocable, and enforceable, save

6  upon such grounds as exist at law or in equity for the revocation of any contract.'" *Rittman v.*

7  *Amazon.com, Inc.*, 971 F.3d 904, 909 (9th Cir. 2020), *cert. den.*, *Amazon.com, Inc. v. Rittman*,

8  141 S. Ct. 1374 (2021) (quoting 9 U.S.C. § 2). "The FAA, however, exempts certain contracts

9  from its scope, specifically the employment contracts of 'seamen, railroad employees, [and] any

10 other class of workers engaged in foreign or interstate commerce.'" *Id.* (quoting 9 U.S.C. § 1);

11 *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001) (interpreting the FAA's

12 Section 1 exemption, commonly known as the "transportation worker" exemption). As

13 explained below, the "transportation worker" exemption applies here and therefore the

14 arbitration provision is unenforceable under the FAA.

15         Additionally, because the parties expressly agreed that the "Federal Arbitration Act"

16 governed arbitration, the Court cannot compel arbitration under the WUAA pursuant to

17 RCW 7.04A. To the extent there is any doubt as to whether the parties agreed to arbitrate under

18 the WUAA in the event the FAA was inapplicable, principles of contract interpretation in

19 Washington mandate that any ambiguities be construed against the drafter, which in this case is

20 the Defendant. The parties agreed that the FAA governed arbitration, not the WUAA, and

21 therefore the court cannot compel arbitration pursuant to the WUAA.

22         For those reasons, the arbitration provision at issue in this case is invalid and therefore

23 unenforceable. This Court should deny Defendant's Motion.

Page 7 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL
        ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

### A. A Court Must Determine Whether the Transportation Worker Exemption Applies, Not an Arbitrator.

As an initial matter, Defendant asserts in its Motion that determination of this threshold issue must be decided by the arbitrator. This argument is directly contradicted by *New Prime v. Oliveira*, 139 S. Ct. 532 (2019) and well-established U.S. Supreme Court precedent, which holds that the application of the transportation worker exemption must be decided by a court, not an arbitrator.

In *New Prime*, the defendant contended that the delegation clause in a contract required the arbitrator, not the courts, to resolve Plaintiff's challenge to the validity of the arbitration agreement. 139 S. Ct. at 538. The Court noted that a delegation clause "gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration." *Id.* (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). However, the Court held that despite the existence of a delegation clause, if a party challenges whether there is a valid agreement to arbitrate in the first place, then that issue must be resolved by the courts, not the arbitrator. *Id.* (concluding that a court may "enforce a delegation clause only if the clause appears in a written provision [that is within the scope of the FAA and] only if the contract in which the clause appears doesn't trigger [the transportation worker] exception"). The Court observed that, under longstanding precedent, a court, not the arbitrator, must decide whether an arbitration provision falls within the scope of the FAA. *Id.* ("We acknowledged as much some time ago, explaining that, before invoking the severability principle, a court should 'determine[ ] that the contract in question is within the coverage of the Arbitration Act.'") (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)) (brackets in *New Prime*). Consequently, where, as here, a party asserts that the arbitration provision falls outside the scope

Page 8 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

of the FAA because it is unenforceable under the FAA's transportation worker exemption, the court must decide the issue—not the arbitrator.

For those reasons, Defendant's argument fails, and the issue presented here is properly before this Court.

**B. The Transportation Worker Exemption Applies and Therefore Defendant's Motion Must be Denied.**

A party seeking to apply the FAA's transportation worker exemption must establish three elements. First, there must be a "contract of employment." 9 U.S.C. § 1. Second, the party must be "engaged in interstate commerce." *Id*.; *see, e.g., Rittman*, 971 F.3d at 915 (holding that Amazon delivery workers were exempt from the FAA's enforcement provisions because they were transportation workers engaged in interstate commerce, despite not actually crossing state lines). Third, the party raising the exemption must qualify as "seamen, railroad employees, or any other class of workers." *Id*. As to that final element, courts have interpreted the phrase "any other class of workers" to broadly include "transportation workers." *Circuit City*, 532 U.S. at 119 ("Section 1 exempts from the FAA only contracts of employment of transportation workers.").

Courts have construed these three elements broadly, and a review of the relevant case law establishes Defendant cannot plausibly contend that Plaintiffs in this case are not "engaged in interstate commerce" or that there is not a "contract of employment" between Plaintiffs and Defendant. Therefore, whether the exemption applies in this case turns on whether Plaintiffs are considered "transportation workers." As explained below, all three elements are satisfied here and consequently the arbitration provision is unenforceable.

Page 9 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

**1. *Plaintiffs have a "contract of employment" with Defendant.***

With respect to the first element, the parties in this case executed a "contract of employment" as that phrase has been interpreted by the U.S. Supreme Court. The Supreme Court recently interpreted that phrase broadly in *New Prime*, 139 S. Ct. 532. In that case, the Court was tasked with deciding whether the phrase "contract of employment" under Section 1 of the FAA was limited to a formal "employment" relationship, or whether independent contractors qualified under the exemption. In a unanimous opinion, the Court held that the Section 1 exemption does not apply exclusively to contracts of "employees," but rather more broadly to any "agreements to perform work," including those of independent contractors. *Id*. at 544. Put another way, a "contract of employment" includes an agreement with an independent contractor. *Id*.

In this case, Defendant cannot seriously contend that the agreement is not a "contract of employment." Mr. Schmutzer and the Bloemers, formally organized as LLCs under Oregon law, agreed "to perform work" for Defendant as independent contractors—namely to transport goods for Defendant and supervise other drivers as they transported goods for Defendant. Mr. Schmutzer and the Bloemers performed that work for approximately two years. Consequently, Plaintiffs executed "contracts of employment" with Defendant within the meaning of the Section 1 exemption. 9 U.S.C. § 1; *see also Waithaka v. Amazon.com*, *Inc.*, 966 F.3d 10, 17 (9th Cir. 2020), *cert. den.*, *Amazon.com, Inc. v. Waithaka*, 141 S. Ct. 2794 (2021) (relying on *New Prime* and holding that in a case between driver and Amazon, "there is no dispute that the independent contractor agreement at issue here would fall within the Section 1 exemption if [plaintiff] qualifies as a transportation worker").

Page 10 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL
       ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

2. *Plaintiffs are "engaged in interstate commerce."*

With respect to the second element, Plaintiffs in this case are "engaged in interstate commerce," as that term has been interpreted by the courts. Mr. Schmutzer's and the Bloemers' primary duties in the DSP program were to personally transport goods in the flow of commerce and directly supervise drivers under their direction who transported goods in the flow of commerce. *See Circuit City*, 532 U.S. at 121 (the phrase "engaged in interstate commerce" "means engaged in the flow of interstate commerce" and "denotes only persons or activities within the flow of interstate commerce"). Defendant cannot seriously assert that Mr. Schmutzer and the Bloemers through their respective entities were not "engaged in interstate commerce" when they transported goods in the flow of commerce and directly managed and supervised drivers under their direction who transported goods in the flow of commerce.

Recent case law firmly supports Plaintiffs' position. In *Rittman*, for example, the Ninth Circuit was squarely presented with the meaning of the phrase "engaged in interstate commerce" in another case involving drivers who transported goods for Amazon. *Rittman*, 971 F.3d at 910-15. The court held that drivers who picked up packages at Amazon's warehouse and delivered those packages for Amazon and Amazon Logistics Inc. (the same defendant in this case) as independent contractors were "engaged in interstate commerce" despite not crossing state lines. *Id.*; *see also Waithaka*, 966 F.3d at 13 (reaching same conclusion as the Ninth Circuit). Courts have held that a party *need not even transport packages* to be considered a transportation worker "engaged in interstate commerce." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593-94 (3rd Cir. 2004) (holding that a supervisor who merely *supervised other drivers* and did not transport goods herself was a transportation worker "engaged in interstate commerce" because her work was "so closely related [interstate and foreign commerce] as to be in practical effect part of it")

Page 11 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

(brackets in original).

Applying those principles from those cases to the facts here, Mr. Schmutzer and the Bloemers are indisputably a class of workers "engaged in interstate commerce" within Section 1's exemption. As in *Rittman* and *Waithaka*, they picked up packages from Amazon warehouses, which had crossed state lines, and then transported or caused to be transported those packages for the last leg of the shipment to their destination. The goods they carried were therefore in the stream of interstate commerce. And in some cases, Mr. Schmutzer and the Bloemers did indeed cross state lines to deliver packages into Washington. Additionally, as in *Palcko*, Mr. Schmutzer and the Bloemers directly supervised other drivers who delivered packages in the Portland metro area. For those reasons, Plaintiffs are clearly "engaged in interstate commerce," within the meaning of the Section 1 exemption.

### 3. *Plaintiffs are "transportation workers."*

The final prong of the Section 1 exemption covers "transportation workers." A review of the text of the provision, definitions and case law that existed at the time the provision was enacted, and recent case law interpreting the provision's scope, demonstrates that the term encompasses not only individuals who are "engaged in interstate commerce" in their *personal* capacity pursuant to an "agreement to perform work" for another but also individuals who *perform that same work as owner-operators though an organized entity*. For that reason, Plaintiffs are "transportation workers" within the meaning of Section 1.

The relevant text of Section 1 states:

> "Nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or **any other class of workers engaged in foreign or interstate commerce**."

9 U.S.C. § 1 (emphasis added). Although the relevant terms are not defined by statute, the U.S.

Page 12 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

Supreme Court has held that "any other class of workers" broadly means "transportation workers." *Circuit City*, 532 U.S. at 119 ("Section 1 exempts from the FAA only contracts of employment of *transportation workers*.") (emphasis added).

Court decisions shed light on the meaning of the term "transportation workers." *New Prime* is particularly instructive in answering the question before this Court and happens to be the most recent guidance from the U.S. Supreme Court on this very subject. In *New Prime*, the U.S. Supreme Court construed the term "employment" as it was commonly understood in 1925. *New Prime*, 139 S. Ct. at 539. In construing the term "employment," the Court did not consider the term in a vacuum; but rather looked at the term in conjunction with the neighboring statutory terms "work" and "workers" as well as cases and definitions that existed at the time the provision was enacted in 1925. Relying on those sources, the Court concluded that the term "employment" simply meant "work." *Id*. at 539 ("At that time [in 1925], a 'contract of employment' usually meant nothing more than an agreement to perform work."). The Court cited to definitions of the term "employment" which, included, among other things: a "**business**; **occupation** . . . **A person's regular occupation or business; a trade or profession**." *Id*. at 540, n. 1 (quoting J. Murray, A New English Dictionary on Historical Principles 130 (1891)) (emphasis added). The definitions at the time also defined "employment" as "**[w]ork or business of any kind**" and considered "'**work' as a synonym for 'employment.**'" *Id*. (quoting 3 The Century Dictionary and Cyclopedia 1904 (1914) (emphasis added); *see also* 3 Oxford English Dictionary 130 (1933) ("[t]hat on which (one) is employed; business; occupation; a special errand or commission").

Those definitions, which inform the meaning of the term "work" as it was understood in 1925, support Plaintiffs' position that the term is not limited to an "agreement to perform work"

Page 13 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

Kell, Alterman & Runstein, L.L.P.
Attorneys at Law
520 SW Yamhill, Suite 600
Portland, OR 97204
Telephone (503) 222-3531
Facsimile (503) 227-2980

01273085

solely in one's *personal capacity*, but rather is broad enough to include individuals, such as owner-operators*, who perform that same work though an organized entity*. The definitions of the time repeatedly refer to "business," "occupation" and a "person's regular occupation, business, trade, or profession." *New Prime,* 139 S. Ct. at 540. The term "work," as it was understood in 1925, is broad enough to include performance of an individual's "business, occupation, trade, or profession" through an organized entity. Put another way, the Section 1 exemption as enacted in 1925 covers "agreements to perform work" regardless of whether an individual performs that work in her personal capacity or whether she performs her work through an organized entity.

Case law since then also supports that understanding of the term. *In Owner-Operator Indep. Drivers Ass'n v. C.R. Eng., Inc.*, 325 F. Supp. 2d 1252 (D. Utah 2004), the Owner-Operator Independent Drivers Association, Inc. ("Association") and individually named plaintiffs brought a number of claims against a trucking company. The Association, which was organized as a corporation, [1] was comprised of independent owner-operator truck drivers who had contracted to transport goods as independent contractors for the defendant. *Id*. at 1255. These owner-operators had signed operating agreements with the defendant, which expressly classified the drivers as independent contractors and also contained an arbitration provision.

The defendant moved to compel arbitration pursuant to the FAA, and, as here, the parties disputed whether the transportation worker exemption applied. *Id*. at 1256-57. The court held that exemption applied because the agreements covered "the owner-operator's agreement to perform *personally*, *or through other drivers*, certain functions related to the operation of the equipment for [the defendant's] business, *namely to operate the equipment together with all*

---

[1] *Owner-Operator Indep. Drivers Ass'n v. C.R. Eng., Inc*., 2005 U.S. Dist. LEXIS 35099 (D. Utah, Aug. 29, 2005) (granting class certification and case caption stating that plaintiff association was a corporation).

Page 14 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

*necessary drivers and labor to transport freight on the company's behalf.*" *Id.* at 1258

(emphases added). Although the *Association* was the primary named plaintiff and the owner-

operator plaintiffs could perform their work *through other drivers*, the court concluded that the

exemption applied and the plaintiffs could not be compelled to arbitrate their dispute under the

FAA. *Id.*

It is worth noting that there are lower court decisions that have concluded that only those

who work in an individual capacity may qualify under the Section 1 exemption. Defendant

identifies two cases: *D.V.C. Trucking, Inc. v. RMX Global Logistics*, 2005 U.S. Dist. LEXIS

50191 (D. Colo. Aug. 24, 2005) and *R&C Oilfield Services, LLC, v. American Wind Transport

Group, LLC*, 447 F. Supp. 3d 339, 347 (W.D. Pa. 2020). Both cases are unhelpful here. In *D.V.C.

Trucking*, the court, with scant analysis, summarily concluded that a corporation could not

qualify under the exemption because it was not a "transportation worker." *D.V.C. Trucking*, 2005

U.S. Dist. LEXIS 50191 at *6-7. The case was decided long before *Prime* and fails to provide

any persuasive reasoning in support of its conclusion.

The *American Wind* case is similarly unhelpful. Although that case recognized the broad

holding in *New Prime*, the court wrongly held that an entity could not qualify for the exemption,

because, in the court's view, the exemption "applied only to employment-related contracts." 447

F. Supp. 3d at 347. The reasoning in that case is inconsistent with *New Prime*, because *New

Prime* held that the exemption covers "independent contractors" who provide "work" for

another—as long as the independent contractors are engaged in interstate commerce pursuant to

an agreement to perform work. It was not limited "employment-related contracts." Rather, the

Supreme Court's holding in *New Prime* applies broadly to "agreements to perform work" and

that necessarily includes "work" that is performed by an individual in her personal capacity or

Page 15 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL
        ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

work that an individual performs through her organized entity. *New Prime*, 139 S. Ct. at 541 (holding that "Congress used the term 'contracts of employment' in a broad sense to capture any contracts for the performance of *work* by workers") (emphasis added).

Indeed, the *New Prime* case involved an independent contractor owner-operator LLC that contracted to perform transportation work for the defendant. As in the present case, an individual (Mr. Oliveira) established an LLC (Hallmark) to transport goods for the defendant (Prime) and signed an Independent Contractor Operating Agreement between Prime and Mr. Oliveira's LLC. *Oliveira v. New Prime, Inc.*, 857 F.3d 7, 9 (1st Cir. 2017), *aff'd*, *New Prime v. Oliveira*, 139 S. Ct. 532 (2019). Prime assisted Mr. Oliviera in forming his entity and directed him to lease a truck from a company closely related to Prime. *Id.*; *Oliveira v. New Prime, Inc.*, 141 F. Supp. 3d 125, 128 (D. Mass 2015). Critically, the contract at issue in that case was actually between Hallmark and Prime. 857 F.3d at 17. However, the First Circuit and the U.S. Supreme Court treated the contract as one between Prime and Mr. Oliveira. Although the issue presented here—whether an independent contractor owner-operator entity could be a "transportation worker"—was not squarely before the courts, it's important to note that the factual scenario with respect to the "worker" in that case was nearly identical to the present case.

Practically speaking, holding that an independent contractor owner-operator who performs work through that individual's entity qualifies as a "transportation worker" gives effect to the holding in *New Prime*. In practice, there are few independent contractors who operate only in their *personal name*, and most lawyers would advise their independent contractor client to perform their work through some form of organized entity. The majority of independent contractors today, including owner-operators, perform their work through an organized entity, rather than in their personal capacity. Indeed, to be considered an "independent contractor" in

Page 16 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

Oregon, ORS 670.600(2)(b) requires that the individual be "engaged in an independently established business." ORS 670.600(2)(b); *Ceva Freight, LLC v. Employment Dep't*, 279 Or. App. 570, 582, 379 P.3d 776, 782 (2016) (observing that an "independent contractor must be 'customarily engaged in an independently established business'") (quoting ORS 670.600(2)(b)). Significantly, Defendant required that Mr. Schmutzer and the Bloemers create a business entity in order to perform their transportation and delivery work for Defendant. They are no less "transportation workers" simply because they did that work through an "independently established business" as required by Defendant and Oregon law. For all those reasons, it would make little practical sense to exclude an independent contractor owner-operator who is engaged in interstate commerce from Section 1's coverage simply because that owner-operator contracted and performed the work through her entity, rather than in her personal capacity.

In sum, Mr. Schmutzer and the Bloemers are indisputably "transportation workers" because, pursuant to "an agreement to perform work" for Defendant, they transported goods in the flow of commerce and directly managed and supervised drivers who transported goods in the flow of commerce. *See, e.g., Rittman*, 971 F.3d at 919 (Amazon's "AmFlex delivery providers fall within the [transportation] exemption, even if they do not cross state lines to make their deliveries."); *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) ("Indisputably, if Lenz were a truck driver, he would be considered a transportation worker under § 1 of the FAA."); *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001) ("As a delivery driver for RPS, Harden contracted to deliver packages 'throughout the United States, with connecting international service.' Thus, he engaged in interstate commerce that is exempt from the FAA."). That they performed this work as independent contractor owner-operators through their respective entities does not make them any less of a "transportation worker" within

Page 17 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

the meaning of Section 1. They are still entitled to the protection afforded to such workers under Section 1. For those reasons, the transportation worker exemption applies and therefore the arbitration provision is unenforceable under the FAA.

### C. There is No Valid Arbitration Agreement Under "Federal Law" or "Washington State Law," Because the Parties Expressly Agreed that the FAA Would Apply.

Defendant asserts that if the arbitration provision is unenforceable under the FAA, this Court should nevertheless enforce it pursuant to "Washington law," which presumably means the WUAA. That argument fails because the parties' agreement expressly calls for application of the FAA, not the WUAA. Where, as here, the parties express a clear intent to apply the FAA and the transportation worker exemption applies, courts have held that arbitration may be compelled under state law only if the parties clearly expressed a desire to provide an alternative state law basis to compel arbitration. *Palcko*, 372 F.3d at 596; *Rittman*, 971 F.3d. at 920. As the drafter of the agreement, Defendant could have specified that the WUAA should apply in the event the FAA does not apply, but Defendant failed to do that. Rather, the parties specifically agreed that the FAA would govern arbitration. To the extent there is any doubt whether the parties agreed to arbitrate under the WUAA in the event the FAA was inapplicable, principles of contract interpretation in Washington mandate that any ambiguities be construed against Defendant, as the drafter. *Rittman*, 971 F.3d at 920. The parties agreed that the FAA governed arbitration, not the WUAA, and therefore the WUAA has no relevance in this case.

The relevant provision in this case states:

> "Governing Law; Submission to Arbitration. This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal law, and Washington state law, without reference to any applicable conflict of laws rules."

*Defendant's Motion to Compel Arbitration*, at 4-5 (quoting provision) (emphasis in original

Page 18 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

provision).  Given the plain language of the agreement, there are three potential "governing

laws" with respect to arbitration: (1) the FAA, (2) "applicable federal law," or (3) "Washington

state law." When the provision is read as a whole, it's clear that the parties contemplated that the

FAA would apply to arbitration enforcement including the body of "applicable federal law"

construing the FAA, and that "Washington state law" would apply to the remainder of the

substantive components of the agreement.  The parties did not intend that the WUAA apply, in

the event the FAA's transportation exemption applied.  Because the agreement is unenforceable

under the FAA, Defendant cannot now seek to compel arbitration pursuant to the WUAA.

In construing arbitration provisions, courts seek to ascertain the mutual intent of the

parties at the time they executed the contract. *Saleemi v. Doctor's Assocs.*, 176 Wn.2d 368, 378,

292 P.3d 108, 113 (2013) (contract principles apply to arbitration provisions).  Although there is

a "strong public policy in favor of [arbitration], "it should not be invoked to resolve disputes that

the parties have not agreed to arbitrate."  *King County v. Boeing Co.*, 18 Wn. App. 595, 602-603,

570 P.2d 713, 717 (1977).  To that end, Washington courts "do not interpret what was intended

to be written but what was written." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493,

504, 115 P.3d 267 (2005).  ]"Where the contract provides a general and a specific term, the

specific controls over the general." *Diamond "B" v. Granite Falls Sch. Dist.*, 117 Wn. App. 157,

165, 70 P.3d 966, 970 (2003). Finally, Washington courts "generally construe ambiguities

against the contract's drafter." *Pierce County v. State*, 144 Wn. App. 783, 813, 185 P.3d 594

(2008).

In this case, the parties' intent is clear from the plain text and context of the agreement.

The provision expressly states that the arbitration provision is governed by the FAA.  The FAA

is a narrow federal statute that pertains only to arbitration and related enforcement matters.

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

*Circuit City*, 532 U.S. at 111 ("As the Court has explained, the FAA was a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice. . . . To give effect to this purpose, the FAA compels judicial enforcement of a wide range of written arbitration agreements."). To that end, the "FAA contains a number of enforcement mechanisms for private parties to compel arbitration pursuant to a valid arbitration agreement," *Rittman*, 971 F.3d at 909, and the FAA "preempts [any] state law that withdraws the power to enforce arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.10 (1984). By expressly stating that agreement is subject to the FAA, the parties intended that the FAA would govern arbitration.

With respect to the provision's reference to "applicable federal law," as Defendant acknowledges in its Motion, the "FAA creates a body of federal substantive law that imposes a presumption in favor of arbitrability under the FAA." *Defendant's Motion*, at 5. Read in context, the parties intended that the FAA and the "body of federal substantive law" created by the FAA would govern arbitration between the parties—if the FAA applied. In other words, "applicable federal law" does not provide an independent basis to compel arbitration, where, as here, the FAA does not apply. In *Rittman*, the Ninth Circuit rejected Amazon's identical argument that the court should compel arbitration under "applicable federal law," in the event the court concluded (as it did) that the transportation worker exemption applied. *Rittman*, 971 F.3d at 918. The court observed that "Amazon does not identify what other 'applicable federal law' would govern the arbitration provision, apart from the FAA." *Id*. Consequently, because the FAA does not apply, Defendant may not rely on a vague "applicable federal law" choice-of-law provision as an alternative ground to compel arbitration. *Id*.

Unlike the narrow scope of the FAA and the body of "applicable federal law" in favor of

Page 20 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL
ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

the FAA, "Washington state law" broadly covers a wide range of matters involving a party's rights, including but not limited to arbitration under the WUAA and contract interpretation issues pursuant to Washington case law and statute. Absent "any other indication of the parties' intent, a general choice-of-law clause applies state substantive law, while the FAA governs arbitration procedure that affects the allocation of decisional authority between courts and arbitrators." *Golden v. O'Melveny & Meyers LLP*, 2016 U.S. Dist. LEXIS 103621, *33 (C.D. Cal. 2016) (citing *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (considering whether parties agreed to apply FAA or California Arbitration Act to arbitration provision). In determining whether the parties intended to apply the FAA or state arbitration law, the Ninth Circuit has held that parties "may agree to state law rules for arbitration even if such rules are inconsistent with those set forth in the Federal Arbitration Act" but they must express a "clear intent" to do so. *Sovak*, 280 F.3d at 1369-70. In this case, because the parties specified a clear intent that the FAA would govern arbitration, Defendant cannot compel arbitration under the WUAA.

Where, as here, the parties express a clear intent to apply the FAA and the transportation worker exemption applies, courts have held that arbitration may be compelled under state law only if the parties clearly expressed a desire to provide an alternative state law basis to compel arbitration. In *Palcko*, for example, the Third Circuit concluded that the parties expressed a clear intent that Washington state law would govern arbitration, in the event the FAA was inapplicable. 372 F.3d at 596. In that case, the court held that the transportation worker exemption applied and therefore the court could not compel arbitration under the FAA. The court nevertheless compelled arbitration pursuant to Washington state law because the parties "provided for that contingency by including the following: '*To the extent that the Federal*

Page 21 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

*Arbitration Act is inapplicable, Washington law pertaining to agreements to arbitrate shall apply.*'" *Id*. (emphasis added). Given that clear intent, the court compelled arbitration under Washington law.

In *Rittman*, however, the court concluded that the transportation worker exemption applied and Amazon could not compel arbitration pursuant to Washington state law. In that case, the relevant provision stated that the terms of the agreement were governed by the "law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of [the agreement], which is governed by the Federal Arbitration Act and applicable federal law." *Rittman*, 971 F.3d. at 920. As here, Amazon argued that, in the event the FAA and "applicable federal law" did not apply, "Washington state law" should govern the arbitration provision. The court disagreed, concluding: "Because it is not clear that the parties intended to apply Washington law to the arbitration provision in the event the FAA did not apply, we construe ambiguity in the contract against Amazon to avoid that result." *Id*.

In this case, there is no basis to compel arbitration under the WUAA. The express terms of the agreement, read in context, indicate that the parties intended that the FAA and applicable federal law would govern arbitration and that Washington state law would apply to the remainder of the agreement. Where "the contract provides a general and a specific term, the specific controls over the general." *Granite Falls*, 117 Wn. App. at 165. Here, the parties specifically intended that the FAA would govern, not the WUAA. And unlike in *Palcko*, where the parties expressly contemplated application of Washington state law to arbitration in the event the FAA was "inapplicable," the parties here provided for no such "contingency." *Palcko*, 372 F.3d at 596. To the extent there is any ambiguity whether the parties intended that the WUAA should govern if the FAA was inapplicable, the court must "construe ambiguity in the contract against

Page 22 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

1  Amazon." *Rittman*, 971 F.3d at 920.  For those reasons, there is no basis to compel arbitration in

2  this case.

3  **IV.  CONCLUSION**

4       For the aforementioned reasons, this Court should deny Defendant's Motion.

5       DATED this 14th day of January, 2022.

6

7                                    KELL, ALTERMAN & RUNSTEIN, L.L.P.

8

9                                       s/ Thomas R. Rask, III

10                                   **Thomas R. Rask**, **III**, OSB No. 934031
                                     trask@kelrun.com

11                                   **James D. O'Donnell**, OSB No. 171284
                                     jodonnell@kelrun.com

12                                   Telephone:  (503) 222-3531
                                     Fax:  (503) 227-2980

13                                   Attorneys for Last Mile Delivery LLC and
                                     Triton Transportation LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 23 – PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO COMPEL
         ARBITRATION

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

1   **CERTIFICATE OF SERVICE**

2       I certify that I caused to be served the foregoing PLAINTIFFS' RESPONSE IN

3   OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION on the following

4   recipient:

5           Sarah J. Crooks
            Perkins Coie LLP
6           1120 NW Couch 10th Floor
            Portland, OR  97209-4128
7           scrooks@perkinscoie.com
            Attorneys for Defendant
8

9   by electronic mail and by having placed a true copy in an envelope addressed to said recipient at

10  the above-listed address and depositing the envelope, with postage prepaid, in the mails of the

11  United States Postal Service in Portland, Oregon..

12      DATED this 14th day of January, 2022.

13                                      KELL, ALTERMAN & RUNSTEIN, L.L.P.

14

15

16           s/ Thomas R. Rask, III
            Thomas R. Rask, III, OSB No. 934031
17          Attorney for Plaintiffs

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

01273085

1

2

3

4            IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                    FOR THE COUNTY OF MULTNOMAH

6

7    TRITON TRANSPORTATION LLC, an          Case No. 21CV41524
     Oregon limited liability company; and LAST
8    MILE DELIVERY LLC, an Oregon limited
     liability company,
9                                           **DEFENDANT'S REPLY IN SUPPORT
                          Plaintiffs,       OF MOTION TO COMPEL
10                                          ARBITRATION**
             v.
11                                          Judge:    Katharine von Ter Stegge
     AMAZON LOGISTICS, INC., a Delaware     Hearing:  February 25, 2022 at 1:15 pm
12   corporation,
13                        Defendant.

14

15          Defendant Amazon Logistics, Inc. ("Amazon") respectfully submits this reply in support

16   of its motion for an order compelling Plaintiffs to arbitrate their claims against Amazon.

17                        **I.    PRELIMINARY STATEMENT**

18          Plaintiffs do not deny that they agreed to arbitrate "any disputes arising out of" their

19   contracts with Amazon. Nor do they claim that any of the five claims they bring against Amazon

20   is somehow beyond the scope of their broad agreement to arbitrate. Instead, to avoid

21   unambiguous contract language requiring arbitration of their claims against Amazon, they argue

22   that the Federal Arbitration Act's "transportation worker" exemption renders their agreements to

23   arbitrate unenforceable. This argument fails. To find in Plaintiffs' favor, this Court would have

24   to both (1) read the agreed application of Washington law out of the Agreement and (2) give

25   unprecedented breadth to the FAA's narrow exception for employment contracts of

26   transportation workers.

PAGE 1 -    DEFENDANT'S REPLY IN SUPPORT OF
            MOTION TO COMPEL ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155770785.2

1      **The Agreement is subject to arbitration under Washington state law.** The Agreement

2 does not, as Plaintiffs mistakenly assert, provide for the exclusive application of the FAA to the

3 Agreement's arbitration clause. In fact, the Agreement is, without exception, "governed by the

4 United States Federal Arbitration Act, applicable United States federal law, ***and Washington***

5 ***state law***." Agreement, Section 13 (emphasis added).

6      **Plaintiffs' claims are subject to arbitration under state law, regardless of the**

7 **applicability of the FAA.** That the Agreement allows for arbitration under state law greatly

8 simplifies the issues before this Court. Where, as here, an agreement provides for the application

9 of the FAA ***and*** state law, courts routinely compel arbitration pursuant to state law, even when a

10 contract is or may be subject to the FAA's transportation worker exception. Put simply, where

11 state law provides an independent basis for arbitration, arbitration is required whether the

12 transportation worker exemption applies or not. Thus, contrary to what Plaintiffs argue, and as

13 recognized by multiple courts, the Court need not address the transportation worker exemption.

14      **The transportation worker exception is irrelevant and inapplicable**. While this Court

15 need not confirm that the transportation worker's exemption does not stand in the way of

16 arbitration here, if the Court were to consider the issue, it would readily conclude that the

17 business agreements here are beyond the narrow scope of the exception, which applies only to

18 contracts of employment for transportation workers.

19        **II.   REPLY TO PLAINTIFFS' STATEMENT OF FACTS**

20      Most of the "facts" Plaintiffs include in their response are not relevant to this motion.

21 Plaintiffs apparently included their allegations to capitalize on the public forum they garnered by

22 defying their contractual obligation to arbitrate their claims. Amazon will rebut Plaintiffs'

23 allegations in the ordinary course in the proper forum. Even on their face, those allegations are

24 insufficient to avoid Plaintiffs' clear obligation to arbitrate their claims. Plaintiffs tellingly omit

25 key details about their businesses. For example, in portraying themselves as "owner-operators"

26 who personally handled deliveries for Amazon, Plaintiffs omit reference to the 494 drivers they

PAGE 2 -   DEFENDANT'S REPLY IN SUPPORT OF
              MOTION TO COMPEL ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155770785.2

1 collectively employed during their tenure as DSPs. Supplemental Declaration of Micah McCabe

2 ("Suppl. McCabe Decl."), ¶ 9. The Agreements were not directed to personal services to be

3 rendered by Plaintiffs, but rather to the services provided by their contracting businesses.

4 ## III. ARGUMENT

5 **A.    Plaintiffs' concede the arbitration clause is valid and covers their claims.**

6       Plaintiffs rightly acknowledge that the Agreement contains a broad and emphatic

7 agreement to arbitrate:

8 > This Agreement is governed by the United States Federal Arbitration Act,
> applicable United States federal law, and Washington state law, without reference
9 > to any applicable conflict of laws rules. ANY DISPUTE ARISING OUT OF
> THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION,
10 > RATHER THAN IN COURT …. The arbitration will be conducted by the
> American Arbitration Association (the "AAA") under its rules, including the
11 > AAA's Commercial Arbitration Rules."

12 Agreement, § 13 (emphasis in original). Plaintiffs do not argue that the arbitration clause is

13 somehow invalid for reasons of illegality, unconscionability, or otherwise. They also do not deny

14 that the claims they bring "aris[e] out of th[e] Agreement" and are therefore within the scope of

15 the arbitration clause.[1] Nor do they contend that the choice of Washington law is somehow

16 invalid and that another state law applies. Instead, the entirety of their argument against

17 arbitration is that the Agreement is ***not,*** as the plain text states, subject to Washington law, and

18 the agreement to arbitrate is not enforceable under an inapplicable and narrow exception to the

19 FAA for contracts of employment of transportation workers. Both arguments fail.

20 **B.    The Agreement provides an independent basis to compel arbitration under
Washington law.**

21

22     **1.    The Agreement provides for arbitration under federal <u>and</u> Washington law.**

23       Plaintiffs are wrong that the Agreement provides for the exclusive application of the FAA

24 ---

[1] Because the Agreement delegates issues of arbitrability to the arbitrator by virtue of the incorporation of the AAA

25 rules, any such challenges would not have advanced Plaintiffs' effort to avoid arbitration here. Outside of Plaintiffs' misplaced views on the applicability of Washington law and the transportation worker exemption, they have not

26 challenged Amazon's observation that the Agreement requires the Arbitrator to adjudicate arbitrability. *See* Motion § IV(B)(1).

PAGE 3 -    DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155770785.2

1  to its arbitration terms. The Agreement says no such thing. The Agreement's invocation of

2  Washington law in addition to the FAA, without qualification, means that the Agreement is

3  subject to arbitration under Washington law.

4        As Plaintiffs acknowledge, in the very same paragraph as the agreement to arbitrate "any

5  dispute" arising out of the Agreement, the Agreement provides for the application of the FAA,

6  federal law, **and** Washington state law:

7       The Agreement is governed by the United States Federal Arbitration Act,
     applicable United States federal law, and Washington state law, without reference

8       to any applicable conflict of laws rules. ANY DISPUTE ARISING OUT OF
     THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION,

9       RATHER THAN IN COURT….

10  Agreement, § 13 (emphasis in original). Plaintiffs wrongly suggest that the mere mention of the

11  Federal Arbitration Act in the choice-of-law/arbitration provision means that the Agreement is

12  subject to arbitration only under that statute. Plaintiffs ignore the conjunction "*and* Washington

13  state law," and the absence of any contract language limiting the application of Washington law

14  to only some of the contract terms.

15        Plaintiffs' interpretation of the Agreement defies settled principles of contract

16  interpretation, and Plaintiffs implicitly concede that the DSP Agreement is subject to

17  interpretation under Washington law. Opp. Br. at 7 (applying principles of contract interpretation

18  under Washington law). In interpreting contracts under Washington law, courts "attempt to

19  determine the parties' intent by focusing on the objective manifestations of the agreement, rather

20  than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times

21  Co.*, 154 Wash.2d 493, 503, 115 P.3d 262 (2005) (citations omitted). In doing so, courts give

22  words their "ordinary, usual, and popular meaning." *Id.* "An interpretation of a contract that

23  gives effect to all provisions is favored over an interpretation that renders a provision ineffective,

24  and a court should not disregard language that the parties have used." *Snohomish Cty. Pub.

25  Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wash.2d 829, 840, 271 P.3d 850

26  (2012). "[C]ourts do not have the power, under the guise of interpretation, to rewrite contracts

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1  the parties have deliberately made for themselves." *McCormick v. Dunn & Black, P.S.*, 140

2  Wash. App. 873, 891, 167 P.3d 610 (2007) (citations omitted).

3      Here, Plaintiffs ask the Court to do precisely what sound policy and long settled law

4  prevents it from doing: write the words "and Washington law" out of the Agreement's choice of

5  law and arbitration clause. To read the Agreement as suggested would contravene the parties'

6  intent manifested in the Agreement's plain and unambiguous terms.

7      Finally, Plaintiffs cannot salvage their strained interpretation by relying on the *contra*

8  *proferentem* rule. *See* Opp. Br. at 22. First, courts construe terms against the drafter only when

9  ambiguity exists. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wash. App. 706, 713, 334 P.3d

10  116 (2014). Plaintiffs fail to identify any ambiguity in the Agreement. Second, even if the

11  choice-of-law clause were ambiguous, courts interpreting arbitration provisions "must indulge

12  every presumption in favor of arbitration." *Canal Station N. Condo. Ass'n v. Ballard Leary*

13  *Phase II, LP*, 179 Wash. App. 289, 297, 322 P.3d 1229 (2013). "If the dispute can fairly be said

14  to invoke a claim covered by the agreement, any inquiry by the courts must end." *Heights at*

15  *Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc.,* 148 Wash. App. 400, 403–04,

16  200 P.3d 254 (2009). The presumption in favor of arbitrability reflects Washington's "strong

17  public policy in favor of such a remedy." *King Cty. v. Boeing Co.*, 18 Wash. App. 595, 602, 570

18  P.2d 713 (1977).

19      **2.      This Court need not resolve whether the FAA's transportation worker**
20              **exception applies.**

21      Plaintiffs devote nine pages of their opposition brief to arguing that their contractual

22  obligation to arbitrate their claims is unenforceable by virtue of the FAA's transportation worker

23  exception**.** Plaintiffs are wrong that the Court must resolve this issue. Because Washington law

24  provides an independent basis for arbitration, this Court need not even address the issue of

25  arbitrability under the FAA.

26

PAGE 5 -    DEFENDANT'S REPLY IN SUPPORT OF
            MOTION TO COMPEL ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155770785.2

1    The Supreme Court's decision in *New Prime Inc. v. Oliveira*, __ U.S. __, 139 S. Ct. 532,

2    537, 202 L. Ed. 2d 536 (2019), does not, as Plaintiffs argue, require the Court to address the

3    transportation worker exception. In *New Prime*, the Supreme Court did not consider the

4    applicability of state law—the sole question before the Court was the applicability of the FAA.

5    As courts before and after *New Prime* have recognized, a court should not resolve the

6    applicability of the FAA's transportation worker exception if state law compels arbitration. In

7    *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021), decided after *New Prime*,

8    the Third Circuit held that courts should decide whether claims are arbitrable under state law

9    before definitively resolving whether the exemption applies. Only if state law bars arbitration

10   does the court need to reach that issue. *Id.* "After all," the court concluded, "the parties' primary

11   agreement is to arbitrate their disputes, so courts should explore both contractual routes to

12   effectuate that agreement when one is called into question." *Id.  See also Adams v. Parts

13   Distribution Xpress, Inc.*, No. 2:20-cv-00697-JMG, 2021 WL 1088231, at *4 (E.D. Pa. Mar. 22,

14   2021) (compelling arbitration under state law while "assuming, without deciding" that FAA

15   exemption applied to individual workers' contracts of employment).

16       Plaintiffs cite **no case** in which a court has construed a forum selection clause providing

17   for the application of the FAA *and* state law to provide for the exclusive application of the FAA

18   on the issue of arbitrability. In fact, courts have routinely rejected this argument. For example, in

19   *Abram v. C.R. England, Inc.*, CV-20-00764-MWF (MRWx), 2020 WL 5077365, at *2 (C.D. Cal.

20   Apr. 15, 2020), motion to certify appeal denied, CV-20-764-MWF (MRWx), 2020 WL 5077373

21   (C.D. Cal. June 23, 2020), the arbitration clause provided for application of "the Federal

22   Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*., and/or the laws of the State of Utah."  The court was

23   unpersuaded by the plaintiff's argument that the parties intended only for the FAA to apply and

24   refused his request to disregard the conjunction "*and/or* Utah state law." *Abram* is not unique.

25

26

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1     Courts have uniformly recognized that state law provides an independent basis for arbitration

2 even if the transportation worker exception applies.[2]

3         Plaintiffs fail to even address, let alone distinguish, the significant body of case law

4 rejecting the very argument they make here. The case law they do cite is simply inapplicable. For

5 example, Plaintiffs place great weight on *Rittmann v. Amazon.com, Inc.*, even though *Rittmann*

6 merely confirms that the Agreement here does ***not*** preclude arbitration under state law. In

7 *Rittmann,* the choice of law clause – as interpreted by the Court – provided for the specific

8 application of only the FAA and federal law to the arbitration clause:

9         These Terms are governed by the law of the state of Washington without regard to
its conflict of laws principles, ***except for Section 11 of this Agreement, which is***
10         ***governed by the Federal Arbitration Act and applicable federal law.***

11 383 F. Supp. 3d 1196, 1203(W.D. Wash. 2019), *aff'd*, 971 F.3d 904 (9th Cir. 2020). The court

12 concluded that the plain language of the choice of law clause prohibited application of

13 Washington law to the arbitration provision, noting that "if the parties intended Washington law

14 to apply if the FAA was found to be inapplicable, they would have said so or even remained

15

16

---

17 [2] *See Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021) ("Finding the § 1 exemption applies does
not mean all state law about arbitration vanishes. Even if an arbitration agreement is outside the FAA, the agreement
18 still may be enforced.") (formatting omitted); *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 357 (S.D.N.Y. 2021)
(subsequent history omitted) ("the inapplicability of the FAA does not render an arbitration clause void when it is
19 otherwise enforceable under state law."); *Romero v. Watkins & Shepard Trucking, Inc.*, No. EDCV 19-2158
PSG(KKx), 2020 WL 5775180, at *8 (C.D. Cal. July 10, 2020), *aff'd*, No. 20-55768, 2021 WL 3675074 (9th Cir.
20 Aug. 19, 2021), and *aff'd*, 9 F.4th 1097 (9th Cir. 2021) (compelling arbitration under Nevada state law where FAA
Section 1 exemption applied); *Smith v. Allstate Power Vac, Inc.*, 482 F. Supp. 3d 40, 47-48 (E.D.N.Y. 2020) ("That
21 plaintiff is exempt from the FAA does not mean . . . that state arbitration law is preempted and that the arbitration
agreement is therefore unenforceable."); *Michel v. Parts Auth., Inc.*, No. 15-CV-5730 (ARR)(MDG), 2016 WL
22 5372797, at *3 (E.D.N.Y. Sept. 26, 2016) ("Even assuming the FAA does not apply, New York state law governing
arbitration does apply"); *Maldonado v. Sys. Servs. of Am., Inc.*, No. SACV 09-542 JVS (RNBx), 2009 WL
23 10675793, at *2 (C.D. Cal. June 18, 2009) ("Where arbitration disputes do not fall under the FAA, state law may be
applied."); *Shanks v. Swift Transp. Co. Inc.*, No. CIV.A. L-07-55, 2008 WL 2513056, at *4 (S.D. Tex. June 19,
24 2008) ("While the FAA does not require arbitration, the question remains whether the exemption of Section 1
operates as a form of reverse preemption, so as to prohibit arbitration of the dispute altogether. Plainly, it does not.
25 The weight of authority shows that even if the FAA is inapplicable, state arbitration law governs."); *Palcko v.
Airborne Express*, 372 F.3d 588, 595 (3d Cir. 2004) ("There is no language in the FAA that explicitly preempts the
26 enforcement of state arbitration issues."). *Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 527 (S.D.N.Y.2003)
(collecting cases).

PAGE 7 -   DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155770785.2

1    silent on the issue." *Id*. Here, in stark contrast to the conclusion in *Rittmann,* the Agreement does

2    not specify that the FAA governs the arbitration provision to the exclusion of Washington law.

3         Plaintiffs' citation to *Golden v. O'Melveny & Meyers LLP*, No. CV 14-8725 CAS

4    (AGRx), 2016 WL 4168853 (C.D. Cal. Aug. 3, 2016) is similarly unavailing. In *Golden*, the

5    court faced the issue of what procedural rules of arbitration apply when the arbitration clause,

6    which mandated the JAMS rules, arguably conflicted with the general choice of law clause

7    calling for California law and, plaintiff argued, California procedural rules of arbitration. *Id.* at

8    *9. This Court is not faced with a similar contradiction as the parties have a single, internally

9    consistent forum selection clause.

10        As much as Plaintiffs wish to will away the Agreement's application of Washington law,

11    they cannot write it out of the Agreement or escape the implications of its inclusion on their

12    obligation to arbitrate their claims. Any outcome other than compelling arbitration would

13    contravene settled law requiring arbitration here and ignore the parties' agreement to be bound

14    by state and federal law.

15   **C.**      **The transportation worker exception does not apply to the agreements at issue.**

16       **1.**      **The exception is given narrow construction.**

17        The FAA was specifically enacted to further judicial enforcement of arbitration

18    agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 121 S. Ct. 1302, 149 L. Ed. 2d

19    234 (2001). To that end, "the FAA compels judicial enforcement of a wide range of written

20    arbitration agreements." *Id.* The FAA's coverage provision, Section 2, provides that a written

21    arbitration provision in any contract "evidencing a transaction involving commerce . . . shall be

22    valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

23    revocation of any contract." 9 U.S.C. § 2. This broad application of the FAA is limited only by

24    Section 1, which provides that the Act shall not apply to "contracts of employment of seamen,

25    railroad employees, or any other class of workers engaged in foreign or interstate commerce."

26    9 U.S.C. § 1.

PAGE 8 -    DEFENDANT'S REPLY IN SUPPORT OF
               MOTION TO COMPEL ARBITRATION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155770785.2

1    The purpose of the FAA "compel[s] that the § 1 exclusion provision be afforded a

2    **narrow** construction." *Circuit City*, 532 U.S. at 118 (emphasis added). Applying the maxim

3    *ejusdem generis*, the United States Supreme Court has interpreted Section 1 to "exempt[] from

4    the FAA only contracts of employment of transportation workers." *Circuit City*, 532 U.S. at 119.

5    "Why this very particular qualification? By the time it adopted the Arbitration Act in 1925,

6    Congress had already prescribed alternative employment dispute resolution regimes for many

7    transportation workers. And it seems Congress 'did not wish to unsettle' those arrangements in

8    favor of whatever arbitration procedures the parties' private contracts might happen to

9    contemplate." *New Prime Inc. v. Oliveira*, __ U.S. __, 139 S. Ct. 532, 537, 202 L. Ed. 2d 536

10   (2019) (quoting *Circuit City*, 532 U.S. at 121).

11          2.      ***New Prime* did not hold that independent contractors are transportation
                    workers.**
12
13          In *New Prime*, the Supreme Court examined whether Section 1's exemption ***could*** apply

14   to *workers* who are independent contractors. The parties "agree[d] that Mr. Oliveria qualifies as a

15   'worker[] engaged in . . . interstate commerce,'" and that his contracts established "an

16   independent contractor relationship." *Id.* at 539. Importantly, although Oliveira was not a party

17   to the contract at issue in *New Prime*, the parties had treated the contract as one between Oliveira

18   personally and New Prime. *See Oliveira v. New Prime, Inc.*, 857 F.3d 7, 17 (1st Cir. 2017).

19   Accordingly, the First Circuit expressly **declined** to "address whether an LLC or other corporate

20   entity can itself qualify as a transportation worker." *Id*. The Supreme Court, concluding that

21   "Congress used the term 'contracts of employment' in a broad sense to capture any contract for

22   the performance of *work* by *workers*," held only that such an independent contractor could be

23   covered by the exemption. *Id.* at 541 (emphasis in original).

24          "The Supreme Court's inclusion of the independent contractor agreement at issue in *New

25   *Prime* within the definition of contracts of employment does not stand for the proposition that *all*

26   independent contractor agreements fall within the exclusion of Section 1 of the FAA." *R&C*

PAGE 9 -   DEFENDANT'S REPLY IN SUPPORT OF
           MOTION TO COMPEL ARBITRATION

131691.1303.0141\155770785.2

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1  *Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*, 447 F. Supp. 3d 339, 347 (W.D. Pa. 2020).

2  To the contrary, the Supreme Court "made clear that [it] viewed the limitations in Section 1 as

3  focused on claims relating to 'workers.'" *Id.* "In other words, while the Supreme Court in *New*

4  *Prime* addressed whether an independent contractor agreement could be deemed a 'contract of

5  employment,' there is no question that the exclusion applied only to employment-related

6  contracts." *Id.*

7      **3.      Commercial contracts between business entities fall outside the exception.**

8          Relying on an overly expansive reading of *New Prime*, Plaintiffs contend that the DSP

9  Agreement is a "contract of employment" and that the business entities Triton Transportation

10  LLC and Last Mile Delivery LLC are a class of "transportation workers." Opp. Br. at 10, 12.

11  Both assertions are wrong.[3]

12          Since *New Prime*, only one court has analyzed whether a commercial contract between

13  business entities may constitute a "contract of employment" of a class of "transportation

14  workers." At issue in *R & C Oilfield* was an agreement by which the plaintiff entity agreed to

15  provide and operate semi-trucks for the purpose of hauling goods to and from the defendant's

16  customers. 447 F. Supp. 3d at 341. Applying the principles articulated by *New Prime*, the

17  question before the court was "whether the Agreement in this case can be construed as one

18  governing employment or, 'work by workers,' as in *New Prime*." *R&C Oilfield*, 447 F. Supp. 3d

19  at 347. The court rightly concluded that a "commercial contract between two business entities"

20  could not be so construed:

21  _____

[3] Plaintiffs' argument regarding crossing state lines is irrelevant because the transportation worker exemption does
22  not apply to their claims. Setting aside that Plaintiffs are not members of a "class of workers" and the Program
Agreements are not "contracts of employment," Plaintiffs also misconstrue what it means to "engage[] in foreign or
23  interstate commerce" for purposes of the residual clause of Section 1. The clause creates a national standard and
requires determining whether the work of a nationwide class of workers is intended to be local in nature versus
24  interstate; work in a particular city that involves incidentally crossing state lines is not sufficient to trigger the
exemption. *See, e.g., Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020), *Hamrick v. Partsfleet,*
25  *LLC*, 1 F.4th 1337, 1346 (11th Cir. 2021); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 865 (9th Cir. 2021);
*Cunningham v. Lyft, Inc.*, 17 F.4th 244, 252 (1st Cir. 2021). Further, this precise issue currently is pending review
26  by the United States Supreme Court in *Sw. Airlines Co. v. Saxon*, 993 F.3d 492 (7th Cir. 2021), *cert. granted*, No.
21-309, 2021 WL 5858631 (2021).

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1  The Agreement in this case was between two businesses. It was an agreement by a vendor and a trucking company for the transport of the vendor's goods. Further,
2  in no way can R & C claim that it—a small business—was an "employee" of American Wind. Rather, the Agreement made no specific designation as to which
3  particular driver associated with R & C would actually perform the work under the Agreement. That was a determination for R & C. The Agreement specifically
4  contemplated that the work could be performed by third parties hired and selected by R & C. . . . ***The Agreement here is a commercial contract between two***
5  ***business entities. It cannot reasonably be construed as a contract of employment governing "work by workers."***

6  *Id.* (emphasis supplied).

7       As the Supreme Court did in *Circuit City*, the *R&C Oilfield* court also applied the canon

8  of *ejusdem generis* to aid in its analysis and concluded from that analysis that the FAA cannot be

9  construed to exempt commercial contracts of business entities from its scope:

10
11      The canon of *ejusdem generis* confirms the Court's determination that a commercial contract between two business entities does not fall under the exclusion of Section 1 of the FAA. First, the exclusion specifically exempts
12      "contracts of employment." It then provides two specific examples of the type of contracts excluded; those of "seamen" and "railroad employees." These terms
13      clearly designate natural persons. Consistent with the specifically identified examples, "seamen" and "railroad workers," the general term "any other class of
14      workers" cannot reasonably be read to apply to artificial business entities. ***When the terms are read as a whole, it is the Court's holding that the exclusion in***
15      ***Section 1 of the FAA cannot be construed to encompass the commercial contracts of artificial business entities like those involved in this case.***

16
17  *Id.* at 348 (emphasis supplied). The court thus concluded that "[n]either the plain language of the

FAA nor the Supreme Court's interpretation in *New Prime*, supports the extension of Section 1
18
of the FAA to commercial disputes brought by artificial business entities." *Id.*
19
        The court's reasoned analysis of this issue in *R&C Oilfield* is equally applicable here.
20
Contrary to their suggestions, Plaintiffs are **not** two individuals who entered into a contract with
21
Amazon to transport goods. Rather, as in *R&C Oilfield*, Plaintiffs are two **business entities** that
22
entered into an arms-length commercial contract with Amazon. Plaintiffs hired their own
23
employees and decided themselves which employees would be assigned to which routes.
24
McCabe Decl., Ex. 1, § 10 ("Your company has exclusive responsibility for its Personnel,
25
including exclusive control over compensation, hours, and working conditions."). Indeed,
26
Plaintiffs employed **nearly 500 people** between them during their tenure as DSPs. *See* Suppl.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1  McCabe Decl., ¶ 3. The Agreement is not an "employment-related contract" and, as artificial

2  business entities, Triton Transportation LLC and Last Mile Delivery LLC are not "transportation

3  workers" any more than they are "seamen" or "railroad employees." If a business entity could

4  avoid a contractually binding arbitration clause in an arm's length contract by simply assigning

5  an owner as a worker from time to time, all transportation businesses would become

6  "transportation workers" that could ignore the otherwise binding contractual arbitration clauses.

7  This certainly was not the intent of the explicitly narrow *New Prime* opinion.

8        Plaintiffs' reliance on *Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.*, 325 F.

9  Supp. 2d 1252 (D. Utah 2004) is misplaced. The arbitration provision at issue in *Independent*

10  *Drivers* was unenforceable for a multitude of reasons, including because it was both

11  unconscionable and failed to provide an accessible forum in which a litigant could resolve their

12  statutory rights. *Id.* at 1262-64. Although the *Independent Drivers* court held that the contract

13  was a "contract of employment," it did not have the benefit of the Supreme Court's interpretation

14  of that term in *New Prime*, which was decided approximately 15 years later. As Plaintiffs put it,

15  "[t]he case was decided long before *Prime* and fails to provide any persuasive reasoning in

16  support of its conclusion."[4] Opp. Br. at 15.

17                              **IV.   CONCLUSION**

18        Plaintiffs' arguments against arbitration defy settled principles of law. Plaintiffs cannot

19  write the application of Washington law out of the Agreement or avoid their obligation to

20  arbitrate their claims against Amazon. Plaintiffs' claims are all subject to mandatory arbitration

21  and must be pursued in that forum.

22

23  ───────────────

[4] The case referenced by Plaintiffs, *D.V.C. Trucking, Inc. v. RMX Global Logistics*, No. CIV.A. 05-CV-00705, 2005
24  WL 2044848 (D. Colo. Aug. 24, 2005), provides **more** analysis of this issue than *Independent Drivers*. Decided one
    year after *Independent Drivers*, The *D.V.C.* court determined that a corporation could not constitute an "employed
25  'transportation worker'" because the party to the agreement was a "business corporation" "not an individual
    transportation worker." *Id.* at *3. The court went further, holding that the agreement at issue "is certainly not a
26  contract of employment of a 'class of worker' engaged in interstate commerce, but rather is an arm's length business
    contract for carrier services." *Id.* The same is true here.

PAGE  12 -   DEFENDANT'S REPLY IN SUPPORT OF
                MOTION TO COMPEL ARBITRATION

131691.1303.0141\155770785.2

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 1:22-cv-00055-CCE-JEP   Document 19-2   Filed 04/28/22   Page 56 of 58

DATED:  February 4, 2022

**PERKINS COIE LLP**

By:  _/s/ Sarah J. Crooks_
     Sarah J. Crooks, Bar No. 971512
     SCrooks@perkinscoie.com
     1120 N.W. Couch Street, Tenth Floor
     Portland, Oregon 97209-4128
     Telephone:  503.727.2000
     Facsimile:  503.727.2222

Attorneys for Defendant

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing **DEFENDANT'S REPLY IN SUPPORT OF**

**MOTION TO COMPEL ARBITRATION** on the following:

Thomas R. Rask, III, OSB #934031
James D. O'Donnell, OSB #171284
Kell, Alterman & Runstein, L.L.P.
520 SW Yamhill, Suite 600
Portland, OR  97204
*trask@kelrun.com*
*jodonnell@kelrun.com*

Attorneys for Plaintiffs

to be sent by the following indicated method or methods, on the date set forth below:

| X | by **sending via the court's electronic filing system** |

| X | by **email** |

| X | by **mail** |

|   | by **hand delivery** |

DATED:  February 4, 2022

**PERKINS COIE LLP**

By:  */s/Sarah J. Crooks*
Sarah J. Crooks, Bar No. 971512
SCrooks@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Defendant

PAGE  1 -    CERTIFICATE OF SERVICE

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

131691.1303.0141\155770785.2